**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

VIP AUTO GLASS, INC., individually, as
assignee, and on behalf of all those similarly
situated,

        Plaintiff,                        **CLASS REPRESENTATION**

vs.                                 Case No. _____

**GEICO GENERAL INSURANCE
COMPANY,**                      Division _____

        Defendant.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **VIP Auto Glass, Inc.**, individually, as assignee, and on behalf of all those similarly situated, brings this action against Defendant, **GEICO General Insurance Company**, and alleges as follows:

### Jurisdiction, Parties, and Venue

1.      This is an action asserting class action claims for declaratory relief, injunctive relief, and damages pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3).

2.      This Court has jurisdiction because the amount in controversy exceeds $15,000.00, exclusive of interest, costs, and attorneys' fees.

3.      Plaintiff is and, at all material times, has been a Florida corporation that provides automotive windshield repair and replacement services in the State of Florida to insured customers who have assigned their insurance benefits to Plaintiff.

4.      Defendant is a foreign corporation doing business under the laws of the State of Florida, and at all material times, sold automobile insurance to insureds in the State of Florida

who have assigned their insurance benefits for windshield repair and replacement services to Plaintiff.

5.      Venue is proper in Hillsborough County, Florida because Defendant has offices for transaction of its customary business in Hillsborough County, Florida, and one or more of the causes of action set forth below arose and accrued in Hillsborough County, Florida.

6.      All conditions precedent to this action have occurred, have been performed, or have been waived.

**Background Information Concerning Defendant's Windshield Insurance Coverage**

7.      In the State of Florida, motor vehicle insurance companies, like Defendant, are statutorily prohibited from applying a deductible to a windshield insurance claim. In this regard, Section 627.7288, Florida Statutes, states:

> 627.7288  Comprehensive coverage; **deductible not to apply to motor vehicle glass.**—The **deductible provisions** of any policy of motor vehicle insurance, delivered or issued in this state by an authorized insurer, providing comprehensive coverage or combined additional coverage **shall not be applicable to damage to the windshield** of any motor vehicle covered under such policy.

(Emph. added).

8.      A "deductible" is a form of self-insurance, which when applicable, relieves the insurer of responsibility for a portion of the loss and requires the insured to share in the risk of loss.

9.      Unlike other statutes governing insurance coverage, Section 627.7288 does not impose any restrictions on the insurance company's liability for windshield coverage.  For example, the Florida personal injury protection ("PIP") statute only requires insurance companies to pay 80% of the insured's "reasonable" medical expenses, up to $10,000. Fla. Stat. § 627.736(1)(a). The PIP statute provides two different methodologies that insurance companies

2

must choose between to calculate that "reasonable" amount. One methodology is a fact dependent method, which is based on a number of enumerated factors, which can never exceed the health care provider's "usual and customary charge." Fla. Stat. § 627.736(5)(a). The other methodology is based on a "schedule of maximum charges" which is based on a set of predetermined and fixed rates and published fee schedules. Fla. Stat. § 627.736(5)(a)1a.-f. No such limitation or payment calculation methodology is included in Section 627.7288 with respect to windshield repair and replacement expenses.

10. Unlike insurers who provide windshield insurance which is statutorily prohibited from having a deductible, insurers who provide PIP insurance are statutorily required to offer their insureds the option of purchasing that PIP insurance with a deductible of $250, $500, or $1,000. Fla. Stat. § 627.739(2). By increasing the amount of the deductible, the insured's PIP insurance premium price is reduced. No such deductible or corresponding premium reduction applies to windshield insurance coverage.

11. Defendant's standard automobile insurance policy issued in the State of Florida, an exemplar of which is attached as **Exhibit A**, purports to provide windshield repair and replacement coverage without a deductible. The policy states the following as it relates to coverage of comprehensive and collision benefits:

### *The Policy*

LOSSES WE WILL PAY

Comprehensive (Excluding Collision)

1. We will pay for each loss, less the applicable deductible caused by collision to the owned or non-owned auto. This includes glass breakage.

   **No <u>deductible</u> will apply to loss to windshield glass.**

3

> At the option of the insured breakage of glass caused by
> collision may be paid under the Collision coverage, if included
> in the policy.

(Exhibit A, at p. 13; emphasis added).  The policy also contains a section that purports to limit

Defendant's liability as follows:

> LIMIT OF LIABILITY
>
> The limit of our liability for loss:
>
> 1.   Is the actual cash value of the property at the time of loss.
>
> 2.   Will not exceed the **prevailing competitive price** to repair
> or replace the property at the time of loss, or any of its parts,
> including parts from non-original equipment manufacturers, with
> other of like kind and quality and will not include compensation
> for any diminution of value that is claimed to result from the
> loss.  Although you have the right to choose any repair facility or
> location, **the limit of liability for repair or replacement of
> such property is the prevailing competitive price which is the
> price we can secure from a competent and conveniently
> located repair facility.**  At your request, we will identify a repair
> facility that will perform the repairs or replacements at the
> prevailing competitive price.

(Exhibit A at p. 14-15; emphasis added).

12.     Other than suggesting that the "prevailing competitive price . . . is the price we

can secure from a competent and conveniently located repair facility," the policy does not

include a definition of the term "prevailing competitive price," and does not identify or adopt any

particular pricing schedule or pricing methodology that cannot be exceeded.

13.     Other than stating that Defendant will, upon the insured's request, "identify a

repair facility that will perform the repairs or replacements at the prevailing competitive price,"

Defendant's policy does not indicate that the insured must use any particular windshield repair

facility, and does not indicate that the repair facility that Defendant will identify will be

"competent" or "conveniently located."

4

## Background Information Concerning the Insured Customer

14.     At all times material, Plaintiff's customer, Deryl Jones (the "**Insured Customer**"), was an insured under an automobile insurance policy issued by Defendant, which policy was in full force and effect and provided coverage for windshield repair and replacement. A copy of the Insured Customer's insurance policy is not attached because Plaintiff does not have a copy of it. Defendant, however, is in possession of the policy.

15.     Upon information and belief, the Insured Customer's insurance policy is in all material respects identical to the exemplar insurance policy attached as **Exhibit A**.

16.     On or about February 8, 2016, the Insured Customer's vehicle sustained physical damage to its windshield, requiring repair and/or replacement of the windshield, which was covered by the insurance policy issued by Defendant to the Insured Customer.

17.     Thereafter, the Insured Customer selected Plaintiff to repair and/or replace the windshield, executed an assignment of his insurance benefits in favor of Plaintiff, and notified Defendant of same. A complete, accurate, and authentic copy of the assignment of benefits is attached as **Exhibit B**.

18.     Thereafter, Plaintiff repaired and replaced the Insured Customer's windshield at a price established in accordance with its agreement with the Insured Customer, and as set forth in its invoice, a complete, accurate, and authentic copy of which is attached as **Exhibit C**.

19.     Thereafter, Plaintiff submitted its request for reimbursement to Defendant.

20.     Thereafter, Defendant underpaid Plaintiff and has refused to pay Plaintiff's charges. A complete, accurate, and authentic copy of Defendant's payment and explanation of benefits is attached as **Exhibit D**.

5

21.     According to Defendant, the reason for the underpayment was Defendant paid what it determined was the "prevailing competitive price."

22.     In addition to Defendant's underpayment for the windshield repair and replacement services provided to the Insured Customer, Defendant has underpaid Plaintiff for other windshield repair and/or replacement work performed for other customers insured by Defendant.

23.     Plaintiff reasonably anticipates that it will continue to perform windshield repair and/or replacement work in the future for other customers insured by Defendant.

24.     In failing and/or refusing to pay the full amount of Plaintiff's charges for the windshield repair and replacement services provided to the Insured Customer and other customers insured by Defendant, Defendant has never contended that Plaintiff was not a "competent" or "conveniently located repair facility," and has never raised any other type of objections concerning the windshield repair and replacement services provided by Plaintiff to Defendant's insureds.

## How Defendant Actually Determines Pricing
## for Windshield Repair and Replacement Services

25.     Despite the provisions of its insurance policy, Defendant does not actually pay "the price [Defendant] can secure from a competent and conveniently located repair facility." Instead, Defendant has an internal memorandum called the "GEICO Glass Pricing Agreement" (dated September 11, 2008), where Defendant itself sets the prices it will pay to that company's repair facilities if one of Defendant's insureds obtains windshield repair or replacements services. A complete, accurate, and authentic copy of the GEICO Glass Pricing Agreement is attached as **Exhibit E.**

6

26.     The prices established by Defendant pursuant to the GEICO Glass Pricing Agreement have absolutely nothing to do the prices that Defendant can secure from any other competent and conveniently located repair facilities, or whether the prices charged by such other competent and conveniently located repair facilities are reasonable, usual, and customary in the geographic market they are located.

27.     Instead, the prices established by Defendant pursuant to the GEICO Glass Pricing Agreement are derived pursuant to a formula (created by Defendant) that represents a significant discount or reduction from the "NAGS benchmark list," and is described in the agreement as follows:

The pricing structure is as follows effective for services performed on or after September 18, 2008:

| | | |
|---|---|---|
| NAGS Windshield: | 47.0% | Off (-) NAGS List |
| NAGS Tempered: | 47.0% | Off (-) NAGS List |
| Labor: | $40.00 | Per NAGS Hour |
| | | |
| High Modulus/ | | |
|   Non-Conductive Urethane | $20.00 | 1.0 Kit |
| | $30.00 | 1.5 Kit |
| | $40.00 | 2.0 Kit |
| All other urethanes | $15.00 | per NAGS kit quantity |
| | | |
| Windshield Repairs: | $49.95 | $10 For each additional break Maximum of 3 repairs total |

This pricing agreement applies to all invoices submitted for services performed on or after September 18, 2008 and supersedes all prior pricing agreements. We reserve the right to change these prices at any time in the future. . . .

*See* Exhibit E.

28.     Upon information and belief, the Defendant modified the formula contained in the GEICO Glass Pricing Agreement, such that the applicable discount or reduction of the "NAGS List" prices was increased from 47% to 50% off of the NAGS list prices.

7

29. Despite being called an "agreement," the GEICO Glass Pricing Agreement is not a contract, and neither Defendant's insureds, nor Plaintiff, nor any of the windshield repair facilities selected by Defendant's other insureds are parties to the GEICO Glass Pricing Agreement.

30. Neither the GEICO Glass Pricing Agreement, nor the price formula described therein, nor any of the other terms and conditions described therein are contained or referenced or alluded to in Defendant's insurance policy.

31. The GEICO Glass Pricing Agreement acknowledges that Defendant's insured are not required to have their windshields repaired or replaced at any specific repair facility, but that agreement suggests that Defendant's insureds should nonetheless bear the costs of any windshield repair and expenses which exceed the unidentified pricing formula which is only set forth in that agreement:

> Our policyholders have the right of personal choice and preference in their selection of an automotive glass shop. However, because we are obligated, on behalf of all of our policyholders, to pay only the competitive market value for glass repairs and replacement services, you may consider refusing the job if you are unwilling to provide service at the prices GEICO has offered above. Nothing contained in any oral or written notice received by us or our agent from you purporting to reject such pricing for services you may render for any of our insureds will be binding on us or otherwise require us to pay you additional sums for services rendered.
>
> If you desire to bill for more than GEICO's competitive pricing as stilted above, you must advise our policyholders prior to initiating glass repair/replacement so that they can determine whether they are willing to pay the additional costs for your services.

*See* Exhibit E.

32. Instead of making any investigation or determination of whether a windshield repair facility used by Defendant's insureds is competent or conveniently located, or whether that

8

facility's prices are reasonable, usual, and customary in the geographic market they are located, Defendant will pay no more than the amount established by Defendant under the GEICO Glass Pricing Agreement—regardless of whether the windshield repair facility is competent or conveniently located to the insured, and regardless of whether the facility would actually decline to repair or replace the insured's windshield for the price established under the GEICO Glass Pricing Agreement.

33.     According to the GEICO Glass Pricing Agreement, a windshield repair facility may charge Defendant's insureds a higher price, as long as the windshield repair facility "advise[s] [the insureds] prior to initiating glass repair/replacement so that they can determine whether they are willing to pay the additional costs for [the] services." In other words, Defendant will limit insurance coverage for windshield repair and replacement service, even if the price established by Defendant in the GEICO Glass Pricing Agreement is less than the minimum price that the windshield repair facility is willing to accept to repair or replace the insured's windshield.

### Nature of the Controversy

34.     After Plaintiff and similarly situated windshield repair facilities in the State of Florida have accepted Defendant's insureds as customers and after they have incurred the expense of repairing and/or replacing the damaged windshields of those insured customers, Defendant: (a) routinely rejects and refuses to pay windshield repair and/or replacement prices incurred by its insureds and charged by said windshield repair facilities, (b) takes the position that other windshield repair facilities would have performed the repair and/or replacement at the so-called "prevailing competitive price," (c) underpays the windshield repair facility based on the so-called "prevailing competitive price" that Defendant contends it "can secure" from a

9

"competent and conveniently located repair facility," and (d) leaves an unpaid balance due and owing.

35.    Simply put, Defendant routinely fails and refuses to pay the full amount of windshield repair and/or replacement charges submitted for insurance reimbursement by Plaintiff and other similarly situated windshield repair facilities because Defendant contends that some other unidentified windshield repair facility would have made the repair and/or replacement for a lower amount than the charges incurred by Defendant's insureds.

36.    By refusing to fully pay the windshield repair and/or replacement charge incurred by its insureds and thereby leaving its insured exposed to liability for the unpaid balance of the charge, Defendant is imposing a "de facto" unlawful deductible upon its insureds in violation of Section 627.7288 and the express terms of its insurance policy.

37.    Alternatively, Defendant is unlawfully reducing the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive.

38.    Alternatively, the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and therefore, controlling Florida principles of contract construction require that limitation provision must be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and/or replacement services.

### Class Action Allegations

39.    Pursuant to Florida Rule of Civil Procedure 1.220, Plaintiff, together with such other persons that may join this action as class representatives, hereby brings this action on its own behalf and on behalf of all those similarly situated persons who were unlawfully underpaid by Defendant for windshield repair or replacement services provided to Defendant's insureds.

10

40. As used herein, the **"Class"** consists of and is defined as all persons or other entities who, within the five-year time period prior to the date on which this lawsuit was filed:

    a.    owned a windshield repair facility located in the State of Florida;

    b.    were hired by a person or other entity insured by Defendant in the State of Florida who was covered by an insurance policy purporting to provide windshield insurance coverage without a deductible;

    c.    provided windshield repair and/or replacement services to said insured;

    d.    own an assignment of benefits from said insured;

    e.    submitted bill(s) to Defendant for payment; and

    f.    did not receive full payment from Defendant;

but excluded from the Class are any such persons or entities whose claims otherwise described above: (i) have already been fully paid by the insured or Defendant or were otherwise satisfied through litigation or settlement; and/or (iii are the subject of pending litigation against Defendant as of the date of any class certification order or other deadline established by the Court (the **"Class"**).

41. Plaintiff reserves the right to amend the Class definition as discovery proceeds and to conform to the evidence.

42. While the exact number of class members is unknown at this time, Plaintiff submits that there are hundreds of potential class members in this action. Accordingly, Plaintiff has a good faith reason to believe that, during the material time period described by the class definition herein, there are hundreds of windshield repair facilities who are potential class members in this action, and the numbers of class members are so numerous that separate joinder of each member is impractical.

11

43. This action poses questions of law and fact that are common to and affect the rights of all members of the class, including but not limited to the following:

a. Whether Defendant lacks statutory and/or contractual authority to pay less than the charges incurred by its insureds for windshield repair and/or replacement services?

b. Whether Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful de facto deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim?

c. Whether Defendant's reliance upon the GEICO Glass Pricing Agreement to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy or any statute, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive?

d. Whether the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of contract construction to be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services?

e. Whether Plaintiff and the Class are entitled to declaratory relief to determine the parties' respective rights and obligations concerning Section 627.7288 and/or the provisions of Defendant's insurance policy?

f. Whether Plaintiff and the Class are entitled to injunctive relief to require Defendant to cease and desist from continuing to unlawfully underpay for windshield damage claims?

g. Whether Plaintiff and the Class have incurred damages as a result of Defendant unlawfully underpay for windshield damage claims?

12

44.     Based on the facts and circumstances set forth herein, Plaintiff's claims are typical of the claims of the members of the class.

45.     Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individuals will likewise have issues that are common to those of all other class members.

46.     Plaintiff has retained the undersigned attorneys who are well-qualified and experienced in handling class action litigation and will adequately protect the interests of the class.

47.     With respect to Counts I and II below, Plaintiff brings this class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) on the grounds that Defendant's actions or omissions as alleged herein are generally applicable to all class members thereby making declaratory and/or injunctive relief concerning the class as a whole appropriate.

48.     With respect to Count III below, Plaintiff brings this class action pursuant to Florida Rule of Civil Procedure 1.220(b)(3) on the grounds that the questions of law or fact common to Plaintiff's claim and the claim each member of the sub-class predominate over any question of law or fact affecting only individual subclass members, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

### Count I – Class Action for Declaratory Relief

49.     This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by Plaintiff and the Class against Defendant.

50.     Plaintiff realleges and incorporates by reference paragraphs 1-47 above.

51.     Plaintiff takes the position that Defendant lacks statutory and/or contractual authority to pay less than the charges incurred by its insureds for windshield repair and/or

13

replacement services. Defendant disagrees and takes the position that it is authorized to pay less than the charged amount pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the price established by the GEICO Glass Pricing Agreement.

52. Plaintiff takes the position that Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful de facto deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim. Defendant disagrees and takes the position that it is not imposing a deductible on its insureds by paying less than the charged amount pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the price established by the GEICO Glass Pricing Agreement, and leaving its insureds responsible for paying the unpaid balance of the charge.

53. Plaintiff takes the position that Defendant's reliance upon the GEICO Glass Pricing Agreement to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive. Defendant disagrees and takes the position that it is not unlawfully reducing the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive, by providing reimbursement pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the price established by the GEICO Glass Pricing Agreement.

54. Plaintiff takes the position that the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of

14

contract construction to be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services. Defendant disagrees and contends that its policy is clear and unambiguous, and that it can lawfully limit coverage for windshield repair and replacements services pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the GEICO Glass Pricing Agreement.

55. Plaintiff is in doubt concerning its rights, and a bona fide present controversy exists between Plaintiff, the class members, and Defendant, concerning the following issues:

a. Whether Defendant lacks statutory and/or contractual authority to pay less than the charges incurred by its insureds for windshield repair and/or replacement services?

b. Whether Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful de facto deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim?

c. Whether Defendant's reliance upon the GEICO Glass Pricing Agreement to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive?

d. Whether the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of contract construction to be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services?

56. The rights, status, or other equitable or legal relations of the parties are affected by Defendant's pattern and practice of doing business, the interpretation of the Defendant's

15

insurance policy, Section 627.7288 and/or other applicable law. Accordingly, pursuant to Chapter 86, Florida Statutes, Plaintiff and the class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

57.    Plaintiff does not seek a mere advisory opinion, but rather, there is a bona fide, actual, present and practical need for a declaration of the parties' respective rights, duties and obligations under Defendant's insurance policy, Section 627.7288, and/or other applicable law.

58.    Section 86.011, Florida Statutes states that this Court has "jurisdiction ... to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether injunctive relief is available under Count II or whether damages are available to Plaintiff under Count III, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under Section 627.7288, the insurance policy, and/or other applicable law.

59.    Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence ... of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court has jurisdiction to determine whether Defendant's past conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

60.    Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, ... or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question

16

of construction or validity arising under such statute, ... contract, ... or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as the Plaintiff) who is in doubt about its rights under the Florida law and/or Defendant's insurance policy. Because Plaintiff routinely provides windshield repair and replacement services to Defendant's insureds and expects to continue to do so in the future, the issues raised in this declaratory relief claim affects Plaintiff on an ongoing and continuing basis.

61.　　Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether Defendant has breached its insurance policy by failing and refusing to properly pay claims for windshield damage, and/or whether this conduct will breach its insurance policies in the future.

62.　　Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of Defendant's anticipated future conduct and to prevent unlawful conduct in the future.

63.　　Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their

17

submission to a jury." Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

64.     Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## Count II – Class Action for Injunctive Relief

65.     This is a common law action for injunctive relief brought by Plaintiff and the Class against Defendant.

66.     Plaintiff realleges and incorporates by reference paragraphs 1-47 above.

65.     Plaintiff and the class members will suffer irreparable injury if Defendant is permitted in the future to continue refusing to pay the charges incurred by its insureds for windshield repair and/or replacement services in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim.  Examples of such irreparable injury include but are not limited to the following:

a.      Absent injunctive relief requiring Defendant to cease and desist from such wrongful conduct in the future, Plaintiff and the class members are left in the untenable position of having to address Defendant's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

b.      Defendant's continuing and ongoing unlawful conduct places its own insureds at risk that windshield repair facilities will seek to collect from those insureds the balance of the charges left unpaid by Defendant, and this will lead to incalculable or unascertainable losses to those insureds who have already paid premiums for windshield damage insurance without a deductible.

c.      Defendant's continuing and ongoing unlawful conduct places its own insureds at risk that windshield repair facilities will

18

refuse to repair or replace their damaged windshields without receiving full payment directly from the insured customer, and this will lead to incalculable or unascertainable losses to those insureds who have already paid premiums for windshield damage insurance without a deductible.

66.     Plaintiff and the class members have a clear legal right to seek an injunction requiring that Defendant cease and desist in the future its continuing pattern and practice of unlawfully refusing to pay the charges incurred by its insureds for windshield repair and/or replacement services in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim.

67.     Plaintiff and the class members have no other adequate remedy at law.

68.     The injunctive relief requested by Plaintiff and the class members would not be contrary to the interest of the public generally.

69.     Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## Count III – Class Action Claim For Benefits

70.     This is a class action claim by Plaintiff against Defendant for unpaid benefits.

71.     Plaintiff realleges and incorporates by reference paragraphs 1-46 and 48, above.

72.     Defendant unlawfully failed and/or refused to pay Plaintiff and the Class members for windshield repair and/or replacement charges incurred by the Insured Customer and other customers insured by Defendant.

73.     Defendant's underpayments violate the provisions of Section 627.7288, which prohibit insurance companies from applying a deductible to windshield damage claims.

19

74. Defendant's underpayments violate the provisions of the insurance policy, which agrees to pay windshield damage claims without applying a deductible.

75. Defendant's underpayments otherwise violate the terms of the insurance policy, which must be liberally construed in favor of providing the highest level of coverage.

76. As a direct and proximate result of the foregoing acts and/or omissions by Defendant, the Plaintiff and the class members suffered damages.

77. Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Sections 627.428, Florida Statutes.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to award the following relief against Defendant:

a. Issue an order certifying that Counts I and II are properly maintainable as a class action under Rule 1.220(b)(2), and/or that Count III is properly maintainable as a class action under Rule 1.220(b)(3);

b. Issue an order appointing Plaintiff to represent the Class defined herein, and appointing the undersigned law firms as class counsel;

c. Issue an order granting a declaratory judgment under Count I declaring the parties' respective rights and obligations under Florida law;

d. Issue an order granting a temporary and/or permanent injunction under Count II as set forth herein;

e. Issue a judgment for damages against Defendant and in favor of the Plaintiff and the Class under Count III, together with interest;

f. Issue an order requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs pursuant to Sections 627.428, Florida Statutes; and

g. Grant such other relief as this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

**DATED** this 1st day of June, 2016.

Respectfully submitted,

J. Daniel Clark, FBN 106471
Matthew A. Crist, FBN 0035539
**CLARK ♦ MARTINO, P.A.**
3407 W. Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 879-0700
Facsimile: (813) 879-5498
Primary email: dclark@clarkmartino.com
Primary email: mcrist@clarkmartino.com
Secondary email: rsmith@clarkmartino.com

and

David M. Caldevilla, FBN 654248
**de la PARTE & GILBERT, P.A.**
Post Office Box 2350
Tampa, FL 33601-2350
Telephone: (813) 229-2775
Primary email: dcaldevilla@dgfirm.com
Secondary email: serviceclerk@dgfirm.com

**COUNSEL FOR PLAINTIFF**