UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIP AUTO GLASS, INC., individually, as assignee, and on behalf of all those similarly situated

    Plaintiff,

vs.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

CASE NO.: 8:16-CV-02012-MSS-JSS

CLASS ACTION

## DECLARATION OF DAVID ANTONACCI

State of Maryland

County of Montgomery

I, David Antonacci, declare as follows:

1. I am over the age of 21, am a resident of Maryland, and am competent to make the statements included in this declaration.

2. I am a technical supervisor in claims home office in the management and information and planning division. I am personally familiar with the records discussed in this declaration and review them as part of my regular job responsibilities and have personal knowledge of the matters contained in this declaration.

3. I was asked to determine the amount of additional insurance benefits that would have to be paid to windshield repair facilities by GEICO General Insurance Company ("GEICO General") for windshield repair or replacement services if GEICO General were required to pay the difference between the amount already paid by GEICO General based upon the prevailing

competitive price and the amount charged by the windshield repair facility. This was limited to claims arising in Florida under policies issued under Florida law. I was further asked to deduct from that amount all claims against GEICO General that have either been resolved by full payment or been in litigation, including both resolved and unresolved claims.

4. In the regular course of business activity, amounts invoiced and paid for windshield repairs and replacements are recorded or generated in an electronic database by persons with knowledge in the course of their job responsibilities at or about the time invoices are received and paid. The records in the database are kept in the regular course of business activity for handling windshield glass repair and replacement claims.[1] The database records include the GEICO claim number, invoice date, windshield vendor, invoiced amount, paid amount, and the difference between the invoiced and paid amount. In connection with determining the amounts discussed in paragraph 3 above, I obtained a data pull from the above database including windshield repair claims invoiced from June 1, 2011 through June 30, 2016. I excluded any claims from windshield repair facilities that were Safelite repair facilities, affiliated with Safelite or part of Safelite's network of glass repair facilities (collectively "Safelite Repair Facility(ies)"), because Safelite Repair Facilities charge and accept the prevailing competitive price and require no adjustment to the amount invoiced. I excluded any claims where no payment was made or where the amount invoiced equaled the amount paid. I also excluded claims where a subsequent payment was made that eliminated the difference between the invoiced and paid amount. The only reason for the adjustment in payment from the invoiced amount would be based upon GEICO's determination of the prevailing competitive price. There are no policy limits or deductibles applied to windshield repair or replacement

---

[1] This database is maintained by our Third-Party Administrator, Safelite Solutions LLC.

claims. The data indicating that an invoice was received from and payment was made to a windshield repair facility indicates that the facility purported to have a valid assignment of benefits.

5. Also in the regular course of business activity, windshield repair and replacement claims are recorded in separate electronic databases, which track by claim number the identity of the GEICO entity that underwrote the coverage (e.g., GEICO General), the state in which the loss occurred, the state in which the policy was issued, the amount of payment on the claim, and whether the claim has ever been the subject of a lawsuit. That information is recorded or generated in the databases by persons with knowledge in the course of their job responsibilities at or about the time the information is received. The records in the databases are kept in the regular course of business activity for handling windshield glass repair and replacement claims.

6. I used the information from the database described in paragraph 5 above to identify which records in the database described in paragraph 4 above related to GEICO General claims that occurred in Florida under policies issued in Florida.

7. The resulting database included GEICO General windshield replacement or repair claims that occurred in Florida from June 1, 2011 through June 30, 2016 where an invoice was received from a windshield repair facility that was not a Safelite Repair Facility and the amount paid was an amount adjusted based upon the prevailing competitive price. The total number of claims meeting this description was 22,064. The total difference of the amount billed and the amount paid by GEICO General on these claims was $6,459,729.86.

8. I also used the information from the database described in paragraph 5 above to identify in the database described in paragraph 4 above records where: (1) a claim had ever been the subject of a lawsuit (whether closed or still pending); and (2) the GEICO General loss

payment amount equaled or exceeded the invoiced amount. The totals for all such claims was 5,084 claims and accounts for $1,345,837.30. I then excluded these claims.

9. The resulting database included windshield replacement or repair claims made in the state of Florida from June 1, 2011 through June 30, 2016, by a windshield repair facility (that was not a Safelite Repair Facility) that submitted an invoice pursuant to a purported assignment from a GEICO General insured with a policy issued in Florida as the rating state; where GEICO General paid the windshield repair facility an amount less than the amount invoiced based upon the prevailing competitive price language in GEICO General's policy. Excluded from the database were all records where: (1) a claim had ever been the subject of a lawsuit (whether closed or still pending); and (2) the GEICO General loss payment amount equaled or exceeded the invoiced (which indicated a possible resolution of the claim). The total number of claims meeting this description was 16,980. The total difference in the invoiced and paid amounts for such claims was $5,113,892.56.

10. I also reviewed the data described in this declaration to determine additional amounts that are likely to accrue after June 30, 2016. As indicated by the historical chart below summarizing the difference between the amount invoiced and amount paid per quarter as described in paragraph 7 above, the difference amount per quarter has followed a consistent increasing pattern. It would be reasonable to conclude that the amount of difference between the invoiced and paid amount for windshield repairs or replacements would at least fall within the $737,937.69 to $1,149,062.73 range experienced over the past four quarters as no material changes in GEICO General's auto policy count or windshield claims is anticipated.

|        | Q1             | Q2             | Q3           | Q4           | Total          |
|--------|----------------|----------------|--------------|--------------|----------------|
| 2011   | X              | $4,837.83[2]   | $20,057.92   | $8,360.73    | $33,256.48     |
| 2012   | $15,961.02     | $11,664.92     | $24,405.78   | $29,647.16   | $81,678.88     |
| 2013   | $75,894.16     | $60,494.31     | $138,630.22  | $104,139.08  | $379,157.77    |
| 2014   | $116,460.77    | $177,484.70    | $267,531.65  | $332,707.48  | $894,184.60    |
| 2015   | $579,825.67    | $693,759.09    | $737,937.69  | $890,564.20  | $2,902,086.65  |
| 2016   | $1,020,302.75  | $1,149,062.73  | X            | X            | $2,169,365.48  |
| TOTAL  |                |                |              |              | 6,459,729.86   |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __2nd__ day of September, 2016.

_David Antonacci_ (signature)
David Antonacci

---

[2] June 2011 only.