# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**VIP AUTO GLASS, INC.,**

      Plaintiff,

                               Case No.: 8:16-cv-2012-T-35JSS

vs

**GEICO GENERAL INSURANCE
COMPANY,**

      Defendant.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, VIP Auto Glass, Inc., individually, as assignee, and on behalf of all those similarly situated, brings this action against Defendant, GEICO General Insurance Company, and alleges as follows:

### Jurisdiction, Parties, and Venue

1.     This is an action asserting class action claims for declaratory relief, injunctive relief, and damages pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

2.     This is an action asserting class action claims for declaratory relief, injunctive relief, and damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.[1] .

3.     Plaintiff is and, at all material times, has been a Florida corporation that provides automotive windshield repair and replacement services in the State of Florida to insured customers who have assigned their insurance benefits to Plaintiff.

---

[1] Plaintiff maintains that the Florida Thirteenth Judicial Circuit Court for Hillsborough County, Florida rightly has exclusive jurisdiction over this case because the amount in controversy exceeds $15,000.00, exclusive of interest, costs, and attorneys' fees, and because the Defendant has failed to demonstrate that removal to federal court is proper. *See* Plaintiff's Motion for Remand (Doc. 14).

4.      Defendant is a foreign corporation doing business under the laws of the State of Florida, and at all material times, sold automobile insurance to insureds in the State of Florida who have assigned their insurance benefits for windshield repair and replacement services to Plaintiff and other windshield repair facilities in Florida.

5.      Venue is proper is Hillsborough County, Florida (Middle District of Florida) because Defendant has offices for transaction of its customary business in Hillsborough County, Florida, and one or more of the causes of action set forth below arose and accrued in Hillsborough County, Florida.

6.      All conditions precedent to this action have occurred, have been performed, or have been waived.

### Background Information Concerning Defendant's Windshield Insurance Coverage

7.      A "deductible" is a form of self-insurance, which when applicable, relieves the insurer of responsibility for a portion of the loss and requires the insured to share in the risk of loss.

8.      In Florida, motor vehicle insurance companies, like Defendant, are statutorily prohibited from applying or imposing a deductible to a windshield repair or replacement claim. In this regard, Section 627.7288, Florida Statutes, states as follows:

> 627.7288 Comprehensive coverage; **deductible not to apply to motor vehicle glass.**—The **deductible provisions** of any policy of motor vehicle insurance, delivered or issued in this state by an authorized insurer, providing comprehensive coverage or combined additional coverage **shall not be applicable to damage to the windshield** of any motor vehicle covered under such policy.

(Emphasis supplied.)

9.      Defendant's standard automobile insurance policy issued in Florida, an exemplar of which is attached as **Exhibit A**, purports to provide windshield repair and replacement

2

coverage without a deductible. The policy states the following as it relates to coverage of comprehensive and collision benefits:

### The Policy

LOSSES WE WILL PAY

Comprehensive (Excluding Collision)

1. We will pay for each loss, less the applicable deductible caused by collision to the owned or non-owned auto. This includes glass breakage.

   **No deductible will apply to loss to windshield glass.**

   At the option of the insured breakage of glass caused by collision may be paid under the Collision coverage, if included in the policy.

*See* Exh. A, p. 13 (emphasis supplied).

10.   The policy also contains a section that purports to limit Defendant's liability as follows:

LIMIT OF LIABILITY

The limit of our liability for loss:

1.   Is the actual cash value of the property at the time of loss.

2.   Will not exceed the **prevailing competitive price** to repair or replace the property at the time of loss, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the loss. Although you have the right to choose any repair facility or location, **the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility.** At your request, we will identify a repair facility that will perform the repairs or replacements at the prevailing competitive price.

3

*See* Exh. A, pp. 14-15 (emphasis supplied). Defendant contends this "Limits of Liability" section of the policy applies to windshield repair and/or replacement claims.

11.    Other than stating that the "prevailing competitive price" is the price Defendant "can secure from a competent and conveniently located repair facility," the policy does not include a definition of the term "prevailing competitive price" or a definition of the term "competent and conveniently located repair facility," or identify or adopt any particular pricing schedule or pricing methodology that cannot be exceeded.

12.    Although the policy states that Defendant will, upon the insured's request, "identify a repair facility that will perform the repairs or replacements at the prevailing competitive price," the policy does not indicate or require that the insured must make such a request or use any particular windshield repair facility, and as a result of the undefined and unauthorized "prevailing competitive price" language in the policy, Defendant has and continues to evade the no deductible mandate in Section 627.7288, Florida Statutes.

### Background Information Concerning the Insured Customer

13.    At all times material, Deryl Jones (the "**Insured Customer**") was insured by Defendant under an automobile insurance policy which was in full force and effect and provided coverage for windshield repair and replacement. The policy attached as Exhibit A is the Insured Customer's policy that was in full force and effect at all times material.

14.    On or about February 8, 2016, the Insured Customer's vehicle sustained physical damage to its windshield requiring repair and/or replacement of the windshield, which was covered by the insurance policy issued by Defendant to the Insured Customer.

15.    Thereafter, the Insured Customer selected Plaintiff to repair and/or replace the windshield, executed an assignment of his insurance benefits in favor of Plaintiff, and notified

Defendant of same.  A complete, accurate, and authentic copy of the assignment of benefits is attached as **Exhibit B.**

16.    Thereafter, Plaintiff repaired and replaced the Insured Customer's windshield at a price established in accordance with its agreement with the Insured Customer, and as set forth in its invoice, a complete, accurate, and authentic copy of which is attached as **Exhibit C.**  The agreement on price was consistent with competitve prices in the market for automobile glass replacement and was based on factors such as Plaintiff's costs and competitive conditions in the local market.

17.    Thereafter, Plaintiff submitted its request for reimbursement to Defendant.

18.    Defendant, however, refused to pay the full amount of Plaintiff's charges. Complete, accurate, and authentic copies of records evidencing Defendant's payment are attached as **Composite Exhibit D.**

19.    According to Defendant, the reason for the underpayment was Defendant paid what it determined was the "prevailing competitive price."

20.    In addition to Defendant's underpayment for the windshield repair and replacement services which Plaintiff provided to the Insured Customer, Defendant has underpaid Plaintiff for other windshield repair and/or replacement work performed for other customers insured by Defendant.

21.    Plaintiff reasonably anticipates that it will continue to perform windshield repair and/or replacement work in the future for other customers insured by Defendant.

22.    In failing and/or refusing to pay the full amount of Plaintiff's charges for the windshield repair and replacement services provided to the Insured Customer and other customers insured by Defendant, Defendant has never contended that Plaintiff was not a

"competent" or "conveniently located repair facility," and has never raised any other objection concerning the windshield repair and replacement services provided by Plaintiff to Defendant's insureds.

23.   As detailed below, Defendant's "prevailing competitive price" is neither "prevailing" in the local markets nor is it a "competitive" price as those terms are generally used and understood. Rather, it is a fictitious price based on arbitrary discounts to an index price adjusted and administered by a third party that also competes with Plaintiff and other independent automobile glass replacement businesses in Florida.

**How Defendant Determines Pricing for Windshield Repair and Replacement Claims**

24.   Pursuant to a contract between Defendant and Safelite Solutions, LLC ("Safelite Solutions"), Safelite Solutions is the third-party administrator for Defendant's windshield repair and replacement claims. Plaintiff has requested a copy of this contract, but Defendant has refused to produce it.

25.   Upon information and belief, Safelite Solutions has entered into similar contracts with other automobile insurance carriers. At this time, Plaintiff does not have copies of the similar contracts.

26.   Safelite Fulfillment, Inc. ("Safelite Fulfillment") operates a chain of windshield repair and replacement facilities nationwide. Safelite Fulfillment and Safelite Solutions are related companies that are part of the "Safelite Group."

27.   Safelite Solutions enters into Participation Agreements with windshield repair and replacement facilities. Facilities that enter into Participation Agreements with Safelite Solutions become part of the "Safelite Network." *See, e.g,* **Exhibit E** (exemplar "Safelite Network Participation Agreement").

28.     Under the terms of the Participation Agreements, in order to participate in the Safelite Network, the facilities agree with Safelite Solutions to accept the prices that Defendant has agreed to pay pursuant to Safelite Solutions' contracts with Defendant.

29.     National Auto Glass Specifications ("NAGS") is a database that is published quarterly and includes, among other things, automobile glass repair and replacement pricing and estimating information, which is routinely accepted by automobile glass replacement companies throughout the United States, including Florida.

30.     The discounted prices that Defendant has negotiated with Safelite Solutions and agrees to pay Safelite Fulfillment facilities and Safelite Network facilities are an across-the-board percentage discount off of the industry standard retail prices suggested by NAGS.

31.     When a Safelite Fulfillment facility or a Safelite Network facility performs windshield repair and/or replacement work for one Defendant's insureds, the facility issues an invoice to Defendant based on the discounted pricing parameters agreed to between Defendant and Safelite Solutions and/or Safelite Fulfillment. Defendant thereafter pays the invoice.

32.     Safelite Fulfillment facilities are Defendant's preferred vendors because they have agreed to accept the discounted prices that Defendant has negotiated to pay pursuant to the pricing parameters agreed to between Defendant and Safelite Solutions and/or Safelite Fulfillment.

33.     When Defendant's insureds contact Defendant regarding windshield repair and/or replacement claims, Defendant directs its insureds to have the repair and/or replacement work performed by its preferred vendors, *i.e.*, a Safelite Fulfillment facility.

34.     If Defendant's insured chooses a windshield repair and replacement facility that is not a Safelite Fulfillment facility or a Safelite Network facility (a "Non-Safelite Facility"), and

the Non-Safelite Facility submits an invoice charging more than the discounted pricing parameters that Defendant has negotiated with Safelite Solutions and/or Safelite Fulfillment, Defendant refuses to pay the Non-Safelite Facility any more than the discounted prices it would pay a Safelite Fulfillment facility or a Safelite Network facility. This results in an underpayment of the Non-Safelite Facility's invoice.

35. In that event, the insured customer is exposed to liability for the portion of the charges that Defendant refuses to pay to the Non-Safelite Facility. The underpayment amount is therefore an unlawful *de facto* deductible and constitutes an unlawful reduction of the amount of windshield insurance coverage that Defendant's insureds are statutorily and contractually entitled to receive.

36. There is a conflict of interest between Safelite's role as a third party administrator charged with administering and determining Defendant's "prevailing competitive price" (Safelite Solutions) and its relationship to the facilities in the Safelite Network and Safelite Fulfillment, a national chain of automobile glass repair and replacement facilities, *i.e.*, facilities that compete with Plaintiff and the members of the proposed Class for automobile glass replacement work. Defendant is aware of this conflict, adopts it, and exploits it to the detriment of its policyholders and in contravention of its own policies and Section 627.7288, Florida Statutes.

37. When Safelite Solutions is acting as Defendant's windshield claim adjuster and submits documents to Non-Safelite Facilities in Florida, Safelite Solutions advises that Defendant "will not reimburse for deductibles not collected," even though deductibles on windshield repair and replacement claims are unlawful in Florida. *See* **Exhibit F**. In other words, Defendant's own internal claim adjustment process treats the unpaid portion of the invoice the same way it would treat a deductible in jurisdictions where one is permitted.

8

38.    Defendant does not notify its insureds, either in the policy or in separate written notifications, of its agreements with Safelite Fulfillment and/or Safelite Solutions, or its determination that the discounted prices that it unilaterally sets with Safelite Fulfillment facilities and Safelite Network facilities are what Defendant actually considers to be the "prevailing competitive price."

39.    When Defendant underpays a Non-Safelite Facility, Defendant does not provide the Non-Safelite Facility or the insured customer with any communication or notice identifying the reason for its underpayment, such as an "explanation of benefits" or an "explanation of review."

40.    In a document called the "GEICO Glass Pricing Agreement," Defendant sets forth the discounted pricing parameters agreed to between Defendant and Safelite Solutions and/or Safelite Fulfillment as of a particular date.  Examples of the GEICO Glass Pricing Agreements are attached as **Composite Exhibit G**.

41.    As of September 18, 2008, the pricing structure that applied in Florida was described in the GEICO Glass Pricing Agreement as follows:

| | | |
|---|---|---|
| NAGS Windshield: | 47.0% | Off (-) NAGS List |
| NAGS Tempered: | 47.0% | Off (-) NAGS List |
| Labor: | $40.00 | Per NAGS Hour |
| | | |
| High Modulus/ | | |
| Non-Conductive Urethane | $20.00 | 1.0 Kit |
| | $30.00 | 1.5 Kit |
| | $40.00 | 2.0 Kit |
| All other urethanes | $15.00 | per NAGS kit quantity |
| | | |
| Windshield Repairs: | $49.95 | $10 For each additional break Maximum of 3 repairs total |

This pricing agreement applies to all invoices submitted for services performed on or after September 18, 2008 and

supersedes all prior pricing agreements. We reserve the right to change these prices at any time in the future. . . .

*See* Exh. G, p. 1.

42.     As of February 6, 2012, the pricing structure that applied in Florida was described in the GEICO Glass Pricing Agreements as follows:

| | | |
|---|---|---|
| NAGS Windshield: | 50.0% | Off (-) NAGS List |
| NAGS Tempered: | 50.0% | Off (-) NAGS List |
| Labor: | $40.00 | Per NAGS Hour |
| High Modulus/ | | |
|   Non-Conductive Urethane | $20.00 | 1.0 Kit |
| | $30.00 | 1.5 Kit |
| | $40.00 | 2.0 Kit |
| All other urethanes | $15.00 | per NAGS kit quantity |
| Windshield Repairs: | $60.00 | Flat Per Windshield |
| Molding Discount | 20% | Off (-) Precision List |

*See* Exh. G, p. 2.

### The Prices that Defendant Pays Are Not "Prevailing" and Are Not "Competitive"

43.     Neither Defendant nor Safelite Solutions "adjusts" windshield repair or replacement claims as that term is understood in the ordinary course of handling of insurance claims. Put another way, neither Defendant nor Safelite Solutions employs insurance adjusters to investigate an insured's windshield repair and/or replacement claim to determine the amount to pay on the claim based on the circumstances of the particular loss pursuant to the terms of the applicable insurance policy, or the usual and customary prices for the windshield repair and/or replacement services and parts.

44.     Further, the amounts paid by Defendant for windshield repair and/or replacement claims are not based on an evaluation of prices that are "prevailing" or "competitive" within a particular geographic area, or prices that are reasonable, usual, or customary.

45.     Despite the provisions of its insurance policy, Defendant does not pay the price it "can secure from a competent and conveniently located repair facility."

46.     Indeed, the "prevailing competitive price" – the price Defendant agrees to pay – is not "prevailing" and it is not "competitive." Instead, it is based on a set of pricing parameters that Defendant has unilaterally set with Safelite Solutions and/or Safelite Fulfillment, without regard to the prices which are customarily charged by Non-Safelite Facilities. By unilaterally setting a "prevailing competitive price," Defendant's conduct is based on Safelite's fundamental conflict of interest as both a third party administrator for automobile windshield claims (Safelite Solutions) and an automobile windshield provider in the Florida market (Safelite Fulfillment), which conflict Defendant created, fosters, and maintains as a result of its employment of Safelite and use and adoption of its pricing policies.

47.     Defendant's identification of the amount it will pay as the "prevailing competitive price" in the insurance policy is vague, ambiguous, misleading and deceptive because the discounted pricing parameters unilaterally set between Defendant and Safelite Solutions and/or Safelite Fulfillment are neither "competitive" nor "prevailing." The discounted pricing parameters are based on what Safelite Fulfillment facilities and Safelite Network facilities have privately agreed to accept from Defendant, in exchange for Defendant's agreement to refer its insureds to those facilities.

48.     In addition, despite being called an "agreement," the GEICO Glass Pricing Agreements are not agreements or contracts, and neither Defendant's insureds, nor Plaintiff, nor any of the class member windshield repair facilities selected by Defendant's other insureds are parties to the GEICO Glass Pricing Agreements.

11

49.     Neither the GEICO Glass Pricing Agreements, nor the price formula described therein, nor any of the other terms and conditions described therein are contained or referenced or alluded to in Defendant's insurance policy.

50.     The GEICO Glass Pricing Agreements acknowledge that Defendant's insureds are not required to have their windshields repaired or replaced at any specific repair facility, but those GEICO Glass Pricing Agreements suggest that Defendant's insureds should nonetheless bear the costs of any windshield repair and expenses which exceed the unidentified pricing formula which is only set forth in the GEICO Glass Pricing Agreements:

> Our policyholders have the right of personal choice and preference in their selection of an automotive glass shop. However, because we are obligated, on behalf of all of our policyholders, to pay only the competitive market value for glass repairs and replacement services, you may consider refusing the job if you are unwilling to provide service at the prices GEICO has offered above. Nothing contained in any oral or written notice received by us or our agent from you purporting to reject such pricing for services you may render for any of our insureds will be binding on us or otherwise require us to pay you additional sums for services rendered.
>
> If you desire to bill for more than GEICO's competitive pricing as stated above, you must advise our policyholders prior to initiating glass repair/replacement so that they can determine whether they are willing to pay the additional costs for your services.

*See* Exh. G, p. 1.

51.     Instead of making any investigation or determination of whether a Non-Safelite facility used by Defendant's insureds is competent or conveniently located, or whether that facility's prices are reasonable, usual, and customary in the geographic market they are located, Defendant simply refuses to pay more than the amount established by Defendant under its unilaterally set price with Safelite Solutions and/or Safelite Fulfillment as provided in the GEICO Glass Pricing Agreements—regardless of whether the Non-Safelite facility is competent

or conveniently located to the insured, and regardless of whether the Non-Safelite facility would decline to repair or replace a windshield for the price established under the GEICO Glass Pricing Agreements.

52.     According to the GEICO Glass Pricing Agreements, a windshield repair facility may charge Defendant's insureds a higher price, as long as the windshield repair facility "advise[s] [the insureds] prior to initiating glass repair/replacement so that they can determine whether they are willing to pay the additional costs for [the] services." In other words, Defendant will limit insurance coverage for windshield repair and replacement service, even if the price established by Defendant in the GEICO Glass Pricing Agreements is less than the minimum price that the facility is willing to accept to repair or replace the insured's windshield, and in that event, Defendant expects its insured to assume liability for the additional charges that exceed the price established by the GEICO Glass Pricing Agreements.

53.     Further, the GEICO Glass Pricing Agreements disregard and do not adjust for local competitive conditions, such as local costs of operation that may vary widely across Florida.

### Nature of the Controversy

54.     After Plaintiff and similarly situated Non-Safelite facilities in Florida have accepted Defendant's insureds as customers and after they have incurred the expense of repairing and/or replacing the damaged windshields of those insured customers, Defendant (a) routinely rejects and refuses to pay windshield repair and/or replacement prices incurred by its insureds and charged by the Non-Safelite facilities, (b) takes the position that other windshield repair facilities, i.e., Safelite Network facilities or Safelite Fulfillment facilities, would have performed the repair and/or replacement at the so-called "prevailing competitive price," (c) underpays the

13

Non-Safelite facility based on the so-called "prevailing competitive price" that Defendant contends it "can secure" from a "competent and conveniently located repair facility," and (d) leaves an unpaid balance due and owing, for which Defendant's insured is left liable.

55.     Simply put, Defendant routinely fails and refuses to pay the full amount of windshield repair and/or replacement charges submitted for insurance reimbursement by Plaintiff and other similarly situated Non-Safelite facilities because Defendant contends that some other unidentified windshield repair facility would have made the repair and/or replacement for a lower amount than the charges incurred by Defendant's insureds.

56.     Defendant's failure to pay any Non-Safelite Facility more than the amount it would pay to a Safelite Fulfillment facility or a Safelite Network facility for the equivalent work leaves its insureds exposed to liability for the unpaid balance of the charge. As such, Defendant's conduct imposes a *de facto* unlawful deductible upon its insureds in violation of Section 627.7288 and the express terms of its insurance policy and constitutes an unlawful reduction of the amount of windshield insurance coverage that Defendant's insureds are statutorily and contractually entitled to receive.

57.     Alternatively, Defendant is unlawfully reducing the amount of windshield insurance coverage which its insureds are statutorily and contractually entitled to receive.

58.     Alternatively, the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is misleading, deceptive, vague, ambiguous, and/or susceptible to more than one interpretation, and therefore, controlling Florida principles of contract construction require that limitation provision must be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and/or replacement services.

14

**Class Action Allegations[2]**

59.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff, together with such other persons or entities that may join this action as class representatives, hereby brings this action on its own behalf and on behalf of all those similarly situated who were unlawfully underpaid by Defendant for windshield repair or replacement services provided to Defendant's insureds.

60.     As used herein, the "**Class**" consists of and is defined as all persons or other entities who, within the five-year time period prior to the date on which this lawsuit was filed:

a.     owned a windshield repair facility located in the State of Florida;

b.     were hired by a person or other entity insured by Defendant in the State of Florida who was covered by an insurance policy purporting to provide windshield insurance coverage without a deductible;

c.     provided windshield repair and/or replacement services to said insured;

d.     own an assignment of benefits from said insured;

e.     submitted bill(s) to Defendant for payment; and

f.     did not receive full payment from Defendant.

Excluded from the Class are any such persons or entities whose claims otherwise described above (i) have already been fully paid by the insured or Defendant or were otherwise satisfied through litigation or settlement; and/or (ii) are the subject of pending litigation against Defendant as of the date of any class certification order or other deadline established by the Court (the "**Class**").

---

[2] For the purposes of this Amended Complaint, Plaintiff makes its class action allegations under Federal Rule of Civil Procedure 23, rather than under Florida Rule of Civil Procedure 1.220, Florida's procedural counterpart.  Nonetheless, as described in its Motion for Remand, Plaintiff maintains that Defendant has failed to demonstrate that this Court has subject matter jurisdiction over this action.

61.     Plaintiff reserves the right to amend the Class definition as discovery proceeds and to conform to the evidence.

62.     While the exact number of Class members is unknown at this time, Plaintiff submits that there are hundreds of potential Class members in this action. In addition, Defendant's Notice of Removal alleges that the number of Class members in this action exceeds 100. *See* Doc. 1 at ¶¶ 13-16. Accordingly, Plaintiff has a good faith reason to believe that, during the material time period described by the Class, there are hundreds of windshield repair facilities who are potential Class members in this action, and the numbers of Class members are so numerous that separate joinder of each member is impractical.

63.     This action poses questions of law and fact that are common to and affect the rights of all members of the Class, including but not limited to the following:

a.      Whether Defendant lacks statutory and/or contractual authority to pay less than the charges incurred by its insureds for windshield repair and/or replacement services?

b.      Whether Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful *de facto* deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim?

c.      Whether Defendant's reliance upon its agreement with Safelite Solutions and/or Safelite Fulfillment, as reflected in the GEICO Glass Pricing Agreements, to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy or any statute, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive?

d.      Whether Defendant's description of the prices it agrees to pay in the policy as the "prevailing competitive price" is deceptive or misleading?

e.      Whether the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of contract construction to be liberally construed in favor of providing the highest level of benefits to

16

the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services?

      f.      Whether Plaintiff and the Class are entitled to declaratory relief pursuant to Chapter 86, Florida Statutes, to determine the parties' respective rights and obligations concerning Section 627.7288 and/or the provisions of Defendant's insurance policy?

      g.      Whether Plaintiff and the Class are entitled to injunctive relief to require Defendant to cease and desist from continuing to unlawfully underpay for windshield damage claims?

      h.      Whether Plaintiff and the Class have incurred damages as a result of Defendant unlawfully underpay for windshield damage claims?

64.      Based on the facts and circumstances set forth herein, Plaintiff's claims are typical of the claims of the members of the Class.

65.      Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individuals will likewise have issues that are common to those of all other Class members.

66.      Plaintiff has retained the undersigned attorneys who are well-qualified and experienced in handling class action litigation and will adequately protect the interests of the Class.

67.      With respect to Counts I and II below, Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on the grounds that Defendant's actions or omissions as alleged herein are generally applicable to all Class members thereby making declaratory and/or injunctive relief concerning the class as a whole appropriate.

68.      With respect to Count III below, Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on the grounds that the questions of law or fact common to Plaintiff's claim and the claim each member of the Class predominate over any question of law or fact affecting only individual Class members, and class representation is

superior to other available methods for the fair and efficient adjudication of the controversy; or alternatively, pursuant to Rule 23(c)(4), on the grounds that Plaintiff's claims may be brought or maintained on behalf of the Class concerning particular issues.

### Count I – Class Action for Declaratory Relief

69. This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by Plaintiff and the Class against Defendant.

70. Plaintiff realleges and incorporates by reference paragraphs 1-67 above.

71. Plaintiff takes the position that Defendant lacks statutory and/or contractual authority to pay less than the competitive charges incurred by its insureds for windshield repair and/or replacement services. Defendant disagrees and takes the position that it is authorized to pay less than the competitively charged amount pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the discounted pricing parameters established under Defendant's agreement with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreements.

72. Plaintiff takes the position that Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful *de facto* deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim. Defendant disagrees and takes the position that it is not imposing a deductible on its insureds by paying less than the charged amount pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the discounted pricing parameters established under Defendant's agreement with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreements, leaving its insureds responsible for paying the unpaid balance

18

of the charge, and unlawfully reducing the amount of windshield insurance coverage that Defendant's insureds are statutorily and contractually entitled to receive.

73.     Plaintiff takes the position that Defendant's reliance on the discounted pricing parameters established under Defendant's private negotiations with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreements to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive. Defendant disagrees and takes the position that it is not unlawfully reducing the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive by providing reimbursement pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the discounted pricing parameters established under Defendant's private negotiations with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreements.

74.     Plaintiff takes the position that the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, arbitrarily applied, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of contract construction to be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services. Defendant disagrees and contends that its policy is clear and unambiguous, and that it can lawfully limit coverage for windshield repair and replacements services pursuant to the "prevailing competitive price" limitation provision of the insurance policy and/or the discounted pricing parameters established under

Defendant's agreement with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreement.

75.    Plaintiff is in doubt concerning its rights, and a bona fide present controversy exists between Plaintiff, the Class members, and Defendant, concerning the following issues:

a.    Whether Defendant lacks statutory and/or contractual authority to pay less than the charges incurred by its insureds for windshield repair and/or replacement services?

b.    Whether Defendant's failure and/or refusal to pay the charges incurred by its insureds for windshield repair and/or replacement services constitutes an unlawful *de facto* deductible in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim?

c.    Whether Defendant's reliance on the discounted pricing parameters established under Defendant's private negotiations with Safelite Solutions and/or Safelite Fulfillment as reflected in the GEICO Glass Pricing Agreements to limit reimbursement to its insureds, when that agreement is not identified, or adopted, or referenced in the insurance policy, results in an unlawful reduction in the amount of windshield insurance coverage to which its insureds are statutorily and contractually entitled to receive?

d.    Whether the "prevailing competitive price" limitation provision contained in Defendant's insurance policy is vague, ambiguous, and/or susceptible to more than one interpretation, and is, therefore, required by controlling Florida principles of contract construction to be liberally construed in favor of providing the highest level of benefits to the insured, such that Defendant must fully pay the price incurred by its insured for windshield repair and replacement services?

76.    The rights, status, or other equitable or legal relations of the parties are affected by Defendant's pattern and practice of doing business, the interpretation of the Defendant's insurance policy, Section 627.7288, and/or other applicable law. Accordingly, pursuant to Chapter 86, Florida Statutes, Plaintiff and the class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

77.    Plaintiff does not seek a mere advisory opinion, but rather, there is a bona fide, actual, present and practical need for a declaration of the parties' respective rights, duties and obligations under Defendant's insurance policy, Section 627.7288, and/or other applicable law.

78.     Section 86.011, Florida Statutes states that this Court has "jurisdiction ... to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether injunctive relief is available under Count II or whether damages are available to Plaintiff under Count III, this Court still has authority to determine the parties' respective rights, status, and other equitable or legal relations under Section 627.7288, the insurance policy, and/or other applicable law.

79.     Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence ... of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court has authority to determine whether Defendant's past conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

80.     Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, ... or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question of construction or validity arising under such statute, ... contract, ... or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has authority to determine the rights of "any person" (such as Plaintiff) who is in doubt about its rights under the Florida law and/or Defendant's insurance policy. Because Plaintiff routinely provides windshield repair and replacement services to Defendant's insureds and

expects to continue to do so in the future, the issues raised in this declaratory relief claim affects Plaintiff on an ongoing and continuing basis.

81.    Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has authority to determine whether Defendant has breached its insurance policy by failing and refusing to properly pay claims for windshield damage, and/or whether this conduct will breach its insurance policies in the future.

82.    Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has authority to determine the legality of Defendant's anticipated future conduct and to prevent unlawful conduct in the future.

83.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury." Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

84.    Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## Count II – Class Action for Injunctive Relief

85.     This is a Florida common law action for injunctive relief brought by Plaintiff and the Class against Defendant.

86.     Plaintiff realleges and incorporates by reference paragraphs 1-67 above.

87.     Plaintiff and the Class members will suffer irreparable injury if Defendant is permitted in the future to continue refusing to pay the charges incurred by its insureds for windshield repair and/or replacement services in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim. Examples of such irreparable injury include but are not limited to the following:

a.     Absent injunctive relief requiring Defendant to cease and desist from such wrongful conduct in the future, Plaintiff and the Class members are left in the untenable position of having to address Defendant's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across Florida, with the risk of suffering inconsistent and varying results.

b.     Defendant's continuing and ongoing unlawful conduct places its own insureds at risk that windshield repair facilities will seek to collect from those insureds the balance of the charges left unpaid by Defendant, and this will lead to incalculable or unascertainable losses to those insureds who have already paid premiums for windshield damage insurance without a deductible.

c.     Defendant's continuing and ongoing unlawful conduct places its own insureds at risk that windshield repair facilities will refuse to repair or replace their damaged windshields without receiving full payment directly from the insured customer, and this will lead to incalculable or unascertainable losses to those insureds who have already paid premiums for windshield damage insurance without a deductible.

88.     Plaintiff and the Class members have a clear legal right to seek an injunction requiring that Defendant cease and desist in the future its continuing pattern and practice of unlawfully refusing to pay the charges incurred by its insureds for windshield repair and/or replacement services in violation of Section 627.7288 and/or the provision of the insurance policy which states that no deductible shall apply to a windshield damage claim.

89.     Plaintiff and the Class members have no other adequate remedy at law.

90.     The injunctive relief requested by Plaintiff and the Class members would not be contrary to the interest of the public generally.

91.     Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

### Count III – Class Action Claim For Benefits

92.     This is a class action claim by Plaintiff against Defendant for unpaid benefits.

93.     Plaintiff realleges and incorporates by reference paragraphs 1-66 and 68, above.

94.     Defendant unlawfully failed and/or refused to pay Plaintiff and the Class members for windshield repair and/or replacement charges incurred by the Insured Customer and other customers insured by Defendant.

95.     Defendant's underpayments violate the provisions of Section 627.7288, which prohibit insurance companies from applying a deductible to windshield damage claims.

96.     Defendant's underpayments violate the provisions of the insurance policy, which agrees to pay windshield damage claims without applying a deductible.

97.     Defendant's underpayments otherwise violate the terms of the insurance policy, which must be liberally construed in favor of providing the highest level of coverage.

98.     As a direct and proximate result of the foregoing acts and/or omissions by Defendant, Plaintiff and the Class members suffered damages.

99.     Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Sections 627.428, Florida Statutes.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to award the following relief against Defendant:

a.      Issue an order certifying that Counts I and II are properly maintainable as a class action under Rule 23(b)(2), and/or that Count III is properly maintainable as a class action under Rule 23(b)(3) and/or (c)(4);

b.      Issue an order appointing Plaintiff to represent the Class defined herein, and appointing the undersigned law firms as class counsel;

c.      Issue an order granting a declaratory judgment under Count I declaring the parties' respective rights and obligations under Florida law;

d.      Issue an order granting a temporary and/or permanent injunction under Count II as set forth herein;

e.      Issue a judgment for damages against Defendant and in favor of Plaintiff and the Class under Count III, together with interest;

f.      Issue an order requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs pursuant to Sections 627.428, Florida Statutes; and

g.      Grant such other relief as this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury.


**[Attorney's signature appears on the following page.]**

Respectfully submitted,

/s/ J. Daniel Clark
J. Daniel Clark, FBN 0106471
dclark@clarkmartino.com
Matthew A. Crist, FBN 0035539
mcrist@clarkmartino.com
**CLARK ♦ MARTINO, P.A.**
3407 W. Kennedy Blvd.
Tampa, Florida  33609
Telephone: (813) 879-0700
Facsimile:  (813) 879-5498

and

David M. Caldevilla, FBN 654248
dcaldevilla@dgfirm.com
Donald C. P. Greiwe, FBN 118238
dgreiwe@dgfirm.com
**de la PARTE & GILBERT, P.A.**
P.O. Box 2350
Tampa, FL  33601-2350
Telephone: (813) 229-2775
Facsimile:   (813) 229-2712

and

Christina K. Ramirez, FBN 0954497
Ramirez.nina@gmail.com
655 Riviera Drive
Tampa, FL  33606
Telephone: (813 263-9162

**Attorneys for Plaintiff**

26

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** on January 11, 2017, I electronically filed the foregoing with the

Clerk of Court by using this Court's CM/ECF system that will send a notice of electronic filing

to all counsel of record.

                              */s/ J. Daniel Clark*
                              J. Daniel Clark