**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

VIP AUTO GLASS, INC., individually, as
assignee, and on behalf of all those similarly
situated,

    Plaintiff,

v.                                      Case No.: 8:16-cv-2012-T-35JSS

GEICO GENERAL INSURANCE
COMPANY,

    Defendant.
_____/

**NOTICE OF FILING
<u>AFFIDAVIT OF BEATRICE DELA PENA</u>**

PLEASE TAKE NOTICE that Defendant, GEICO General Insurance Company, has filed the following attached Affidavit of Beatrice Dela Pena, dated March 24, 2017, in support of the Joint Submission in Response to Order of March 7, 2017, and including Unopposed Motion to Seal (Dkt. 59), together with all subsequent filings and proceedings in the above styled action.

**[Remainder of page intentionally left blank]
[Signature of counsel page follows]**

Dated:  March 27, 2017

                                      Respectfully submitted,

*/s/ E.K. Cottrell*
John P. Marino (Florida Bar No. 814539)
Lindsey R. Trowell (Florida Bar No. 678783)
Edward K. Cottrell (Florida Bar No. 013579)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street
Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile: (904) 598- 6204
Email:   jmarino@sgrlaw.com
              ltrowell@sgrlaw.com
              ecottrell@sgrlaw.com

*Attorneys for Defendant*
*GEICO General Insurance Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

*/s/ E.K. Cottrell*
Attorney

## AFFIDAVIT OF BEATRICE DELA PENA

STATE OF GEORGIA

COUNTY OF BIBB

Before me, the undersigned notary public, on this day personally appeared Beatrice Dela Pena who, upon being duly sworn by me, stated under oath as follows:

1. My name is Beatrice Dela Pena. I am over the age of 18 and am competent to make the statements included in this declaration.

2. I am currently employed with GEICO General Insurance Company as emergency road service and glass director. In my position as director, I am responsible for claims and vendor relationships in connection with all windshield repair and replacement claims in the United States for GEICO General and its affiliates (hereinafter "GEICO").

3. By virtue of my position and responsibilities, I have personal knowledge of the matters set forth in this Affidavit; and I am authorized on behalf of GEICO to attest to the statements in this Affidavit.

4. The auto insurance business is highly competitive. In Florida alone, dozens of insurers compete in the personal auto insurance market. Consumers of auto insurance typically have six month policy terms, and are generally free to switch their auto insurance at any time. Those consumers tend to heavily weigh the price of insurance in choosing their insurer, as evidenced by the many advertisements in the industry attempting to induce consumers to make price comparisons and switch auto insurers.

5. In these highly competitive market conditions, an auto insurer may succeed or fail based on the proprietary programs, methods, techniques and processes they have developed to provide customer service for their insureds, to promote fast, fair, and effective claims handling

1

and other related aspects of the business, which may involve working relationships with vendors and third parties.

6. With respect to windshield repair and replacement claims, GEICO has devoted considerable time and money resources to developing its proprietary programs, methods, and techniques. GEICO handles and pays approximately one hundred thousand (100,000) glass claims per year in Florida. Even small efficiencies per claim can have significant financial impact on costs and therefore ultimately premiums. Thus, while many insurer processes may have similarities at the general level, the details of how such processes are implemented have significant competitive impact.

7. GEICO has entered into a contractual relationship with Safelite Solutions, LLC to assist GEICO in administering and paying charges submitted by glass shops (the "Safelite Agreements"). GEICO considers the information contained in the Safelite Agreements trade secret and confidential commercial information that has value and provides an advantage or an opportunity to obtain an advantage over those who do not know or use it.

8. GEICO has taken measures to prevent the disclosure of the contents of the Safelite Agreements to anyone other than those who have been selected to have access for limited purposes, and GEICO intends to continue to take such measures. Access to the Safelite Agreements within GEICO is limited to those persons with a need for access. This is generally restricted to officer level employees with limited access provided to director level management, if necessary, in connection with their job responsibilities. Claims representatives and managers do not have access to the Safelite Agreements.

9. The Safelite Agreements are not, and have not been reasonably obtainable without GEICO's consent by other persons by use of legitimate means.

10. The Safelite Agreements are not publicly available elsewhere.

11. GEICO considers the entirety of the Safelite Agreements to be confidential and trade secret, as the terms under which Safelite companies provide services to GEICO provide GEICO a competitive advantage over its competitors.

12. The Safelite Agreements do not address GEICO's coverage obligations under the laws of any particular state or policy form. Nor is any such responsibility assumed by Safelite. GEICO claims must be reported directly to GEICO by the insured and are approved by GEICO. GEICO maintains sole authority and responsibility for determining the amount that will be paid for a windshield repair or replacement.

13. The Safelite Agreements do not specify the amount that GEICO will pay non-Safelite owned glass shops. Nor do they set forth any criteria, methodology, or information regarding determining those amounts. Rather, the Safelite Agreements simply indicate that GEICO will provide Safelite Solutions with the pricing GEICO wants applied.

14. While all aspects of the Safelite Agreements are considered proprietary and treated as confidential by GEICO, some aspects of the Safelite Agreements are considered highly sensitive, proprietary, and trade secrets. Specifically, (1) the criteria and methodology utilized to determine the amount of compensation to be paid to Safelite Solutions, LLC and Safelite Fulfillment shops; (2) the functionality and performance guidelines for the computer systems utilized by GEICO and Safelite Solutions; (3) auditing criteria for glass shop invoices; (4) amount of service fees for auditing and paying invoices; and (5) the identity and contact information of the persons designated to receive notices from the other party under the agreements.

15. GEICO also maintains glass claims data in its own claims systems and requires Safelite Solutions to maintain GEICO's glass claims invoicing and payment data in Safelite Solutions systems in order to provide data or reports upon GEICO's request.

16. GEICO considers the information contained in GEICO's glass claim data and reports generated from that data trade secret and confidential commercial information that has value and provides an advantage or an opportunity to obtain an advantage over those who do not know or use it.

17. GEICO has taken measures to prevent the disclosure of its glass claims data and reports to anyone other than those who have been selected to have access for limited purposes, and the company intends to continue to take such measures. Generally, such reports are restricted to GEICO managers and officers with responsibility over glass claims.

18. GEICO's claims data and reports are not, and have not been reasonably obtainable without GEICO's consent by other persons by use of legitimate means.

19. GEICO's claims data and reports are not publicly available elsewhere.

20. Disclosure of the Safelite Agreements to third parties could cause serious immediate harm to GEICO and to its competitive position in the industry. Specifically, the Safelite Agreements include proprietary information on Safelite Solutions, LLC's role in administering GEICO's payments, on the processes and techniques used to administer GEICO payments, and information with respect to how GEICO arranges its relationships with the third party vendor.

21. Disclosure of GEICO's claims data or reports to third parties could cause serious immediate harm to GEICO and to its competitive position in the industry. Specifically, GEICO's claims data and reports generated from that data would reveal GEICO's collective

experience with respect to billing, payments, claims trends, and other information valuable to GEICO's competitors who, as a general practice, protect such information from disclosure to GEICO and the public.

22. GEICO is one of the country's largest insurance carriers and the disclosure of its proprietary information and trade secrets locally could have far reaching nationwide consequences which could be extremely detrimental to GEICO.

23. The injury threatened by the disclosure sought in this case is "cat out of the bag" harm. Such harm, once caused, is beyond the power of any court to remedy. If the proprietary and trade secret information contained in GEICO's contracts with Safelite Solutions LLC is disclosed, it will cause immediate and irreparable harm to GEICO not just in Florida but potentially anywhere GEICO does business throughout the country.

**(THIS SECTION PURPOSEFULLY LEFT BLANK)**



FURTHER AFFIANT SAYETH NOT

By: _____B_____

Printed Name: __Beatrice Dela Peña__

Title: __ERS/Glass Claims Director__

Before me, the undersigned Notary Public, on this date appeared __Beatrice Dela Peña__, personally known to me to be the person whose name is subscribed to the foregoing instrument, and, as a corporate agent for GEICO General Insurance Company, acknowledged to me that she executed the same for the purposes and consideration therein expressed on behalf of and as an act of GEICO General Insurance Company.

The foregoing instrument was acknowledged before me this __24th__ day of __March__, 2017 by __Beatrice Dela Peña__ who took an oath.

_____
Notary Public, State of Georgia

__MARY KAY HURLBURT__
Type/Print Name of Notary Public
My commission expires

6