# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

VIP AUTO GLASS, INC., individually, as assignee, and on behalf of all those similarly situated

    Plaintiff,

vs.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

_____\

**CASE NO.: 8:16-CV-02012-MSS-JSS**

**CLASS ACTION**

## DEFENDANT GEICO GENERAL
## INSURANCE COMPANY'S UNOPPOSED[1] MOTION TO SEAL

Defendant, GEICO General Insurance Company ("GEICO General"), respectfully requests that the Court enter an order requiring Plaintiff, VIP Auto Glass, Inc. ("VIP") to file certain exhibits to its Motion for Class Certification (Dkt. 66) (the "Class Certification Motion") under seal pursuant to Local Rule 1.09(a).[2]  Defendant states as follows in support of this motion:

### BACKGROUND

Plaintiff filed its Motion for Class Certification (Dkt. 66) on May 19, 2017, together with a Notice of Filing Proffer of Evidence in Support of Plaintiff's Motion for Class Certification (Dkt. 68).  Plaintiff intends to file certain confidential and proprietary documents of GEICO

---

[1] Plaintiff does not agree or consent to this motion, but shall not oppose the motion pursuant to the parties' Confidentiality Agreement dated September 30, 2016." *See* Local Rule 3.01(g) Certification, *infra*.

[2] Plaintiff stated in its Motion for Class Certification that the parties had agreed that Defendant would file its Motion to Seal by May 24.  The parties subsequently modified the date to May 26, 2017.

General in support of its motion that were produced by GEICO General pursuant to either the protective order issued by the Court (Dkt. 62) or the prior Confidentiality Agreement entered into between the parties. Plaintiff provided GEICO General with prior notice of its intent to file the materials and the parties agreed that GEICO General would file this motion to seal by May 24, 2017. The subject documents are as follows:

| **Description** | **PL Exhibit No.** | **Bates No.** | **Produced Under** |
|---|---|---|---|
| 3 Provider Agreements between GEICO and Safelite Solutions (2008, 2013, 2016) | 8, 9, 10, 11 | GG/VIP0001061-1091 (2008 vers.); 1092-1122 (2013 vers.); 1123-1125 (2016 vers.) | Order Granting Motion to File Under Seal (Dkt. 62) |
| Exhibits to Declaration of Lee Foskey dated March 16, 2017<br>• Exh A - F&R Report<br>• Exh B - Peer Report | <br><br>15-1<br>15-2 | N/A | Confidentiality Agreement |
| 2015 Training Manual excerpts ("2015 Student Manual") | 5 | GG/VIP000140-142, 187, 262-328 | Confidentiality Agreement |
| 2016 Training Manual excerpts ("2016 Student Manual") | 6 | GG/VIP000387-389, 429, 447-448, 450-502 | Confidentiality Agreement |

With respect to the three provider agreements, the Court's March 7, 2017 Order (Dkt. 50) required GEICO General to produce "for attorneys' and experts' eyes only" applicable to master agreements between GEICO and Safelite Solutions. The Order also required the parties to jointly submit a proposed protective order. As directed, the parties submitted the Joint Submission in Response to Order of March 7, 2017, and Including Unopposed Motion to Seal (Dkt. 59). In support of the motion to seal, GEICO General filed the Affidavit of Beatrice Dela Pena (Dkt. 60) (the "Pena Affidavit") setting forth the confidential and proprietary nature of the agreements and the harm that disclosure would cause. The Court granted the proposed protective order, which established a protocol for filing the agreements. (Dkt. 59-1, pg. 3, paragraph 4.a.). The Court

also granted that motion to seal without prejudice to either party later challenging the filing under seal. (Dkt. 62). Pursuant to the March 31 Order, GEICO General produced for "attorneys' and experts' eyes only" three versions of the provider agreement between GEICO and Safelite Solutions, dated January 1, 2008, 2013, and 2016.

With respect to the other documents, the parties entered into a Confidentiality Agreement on September 30, 2016 consistent with the Court's preferred procedure and with the Case Management and Scheduling Order entered by the on October 13, 2016 (Dkt. 30, pg. 4).[3] A copy of the Confidentiality Agreement is attached as Exhibit 1. GEICO General produced the Student Manuals and Exhibits to the Declaration of Lee Foskey dated March 16, 2017, all of which were designated as Confidential documents pursuant to the Confidentiality Agreement. GEICO General is submitting a Declaration of Lee Foskey dated May 24, 2017 in support of this motion that establishes the confidential and proprietary nature of the documents as well as the harm that would result from disclosure (the "May 24 Foskey Declaration"). A copy of the May 24 Foskey Declaration is attached as Exhibit 2. In addition, Safelite Solutions has provided the Declaration of Andy Kipker regarding the subject documents in which it has an interest in protecting a confidential or proprietary interest (the "Safelite Declaration"). A copy of the Safelite Declaration is attached as Exhibit 3.

Local Rule 1.09 governs this motion, and requires GEICO General to address the following six areas: "(i) an identification and description of each item proposed for sealing;

---

[3] The Federal Rules of Civil Procedure and cases interpreting those rules contemplate that such Confidentiality Agreements will carry the same enforcement rights as an order entered by the court. *See* Fed. R. Civ. P. 29(b), Advisory Committee Note, 1993 Amendments ("litigants ordinarily are not required to obtain the court's approval of these stipulations."); *Tillman v. C.R. Bard, Inc.*, 97 F.R.D. 660, 665 (M.D. Fla. 2014) (noting that "the Court does not consider this distinction [that the Court did not adopt the stipulation] significant.").

(ii) the reason that filing each item is necessary; (iii) the reason that sealing each item is necessary; (iv) the reason that a means other than sealing is unavailable or unsatisfactory to preserve the interest advanced by the movant in support of the seal; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of legal authority supporting the seal."

In addition, Federal Rule of Civil Procedure 26(c)(1) authorizes courts, upon a showing of "good cause" to issue protective orders. Such orders may forbid or limit the scope and manner of such disclosure or discovery. In addition to the general authority provided under the rule, Rule 26(c)(1)(G) specifically authorizes courts to protect from disclosure trade secrets and confidential commercial information. The Rule authorizes protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed.R.Civ.P. 26(c)(1)(G).

<u>IDENTIFICATION AND DESCRIPTION OF MATERIALS TO BE SEALED</u>

*1.    3 Provider Agreements between GEICO and Safelite Solutions*

GEICO General produced the 2008, 2013, and 2016 versions of its provider agreement with Safelite Solutions. The production was limited to "attorneys and experts eyes only" pursuant to the Court's Orders of March 7, 2017 (Dkt. 50) and March 31, 2017 (Dkt. 62) (adopting the Joint Submission (Dkt. 59)). The Order also required that, prior to filing any of the documents subject to the protective order, the parties to meet and confer and, absent agreement, submit the documents in camera with position statements. (Dkt. 59-1, pg. 3, paragraph 4.a.). The March 31 Order further granted the motion to file the provider agreements under seal without prejudice to either party later challenging the filing under seal. (Dkt. 62).

The Court's March 31 Order applies to require submission of the provider agreements in camera and, if filing is permitted, to require the filing to be made under seal. However, in an abundance of caution, GEICO General restates the grounds for filing under seal as set forth in

the Motion to Seal (Dkt. 59) and as factually supported by the Affidavit of Beatrice Dela Pena (Dkt. 60) and the prior order obtained by a Florida Circuit Court protecting the provider agreement from disclosure upon a finding that it constituted confidential, proprietary information (Dkt. 61).

    2.    *Training Student Manuals*

GEICO General has produced two versions of its internal and proprietary "GEICO Glass Claims Student Manual" during the course of discovery in this case. The manuals cover the same internal training subject matter, but are different editions. One version came into use in 2013 and the other is an updated version that came into use in 2016. Both editions of the manuals are internally designated and labeled as confidential materials. These Student Manuals reveal both GEICO's proprietary glass claims handling process and its proprietary training process.

Plaintiff intends to file certain sections in each produced manual in support of the Class Certification Motion. These sections can be categorized as follows: (1) guidelines for handling insured calls opening a glass claim; (2) a generalized description of National Auto Glass Specifications ("NAGS"); and (3) detailed screen-by-screen instructions explaining the process for setting appointments at the request of an insured and for generating work orders to be submitted to glass shops.

    3.    *Reports Attached to March 16 Foskey Declaration.*

GEICO General has also produced two exhibits to the March 16 Foskey Declaration, which were designated as Confidential pursuant to the Confidentiality Agreement.

Exhibit A to the March 16 Foskey Declaration is an exemplar of a report generated from GEICO's confidential claims data summarizing GEICO's claims experience. As explained in

paragraph 5 of that declaration, "The exemplar report shows, at a national level, summary results for 'Non-Network' glass shops, which are shops that are neither Safelite Fulfillment owned shops nor network affiliate shops that have agreed to charge the rate approved by GEICO." (Dkt. 68-22, PageID 1679-80). This report contains extremely sensitive commercial information. Specifically, it summarizes claims experience data over a multi-year period using data and systems that can only be generated with access to GEICO's complete claim history. *Id*.

Exhibit B to the March 16 Foskey Declaration is a peer report provided by Safelite Solutions to GEICO. As explained in that declaration, the exemplar peer report contains comparative pricing levels of other insurance companies or fleet purchasers of services provided without identifying the name of the entity other than GEICO. *Id*.

REASON THE FILING IS NECESSARY

Counsel for VIP believes that the documents described above are relevant to its Class Certification Motion. *See* Class Certification Motion, p. 6. Plaintiff has therefore indicated it intends to file this information in support of its Class Certification. Accordingly, GEICO General is filing this motion to protect from unnecessary disclosure of this confidential trade secret and commercially sensitive information.

REASON THAT SEALING IS NECESSARY

GEICO General has established the necessity of filing the documents under seal in the Affidavit of Beatrice Dela Pena and the May 24 Foskey Declaration, as summarized below.

1. *3 Provider Agreements between GEICO and Safelite Solutions*

As established in the Pena Affidavit, GEICO General has entered into a contractual relationship with Safelite Solutions, LLC to assist GEICO in administering and paying charges submitted by glass shops (the "Safelite Agreements"). *See* Pena Affidavit, ¶ 7 (Dkt. 60, PageID 936-940). GEICO General considers the entirety of the Safelite Agreements to be

6

confidential and trade secret, as the terms under which Safelite companies provide services to GEICO General provide it with a competitive advantage over its competitors. *Id.* at ¶ 11.

The Pena Affidavit further states that GEICO General has taken measures to prevent the disclosure of the contents of the Safelite Agreements to anyone other than those who have been selected to have access for limited purposes, and GEICO General continues to take such measures. *Id.* at ¶ 8. The Safelite Agreements are not publicly available. *Id.* at ¶ 10. Access to the Safelite Agreements within GEICO is limited to those persons with a need for access. *Id.* at ¶ 8. This access is generally restricted to officer level employees with limited access provided to director level management, if necessary, in connection with their job responsibilities. *Id.* Disclosure of the Safelite Agreements would cause significant harm to GEICO by revealing the processes and techniques used to administer GEICO's payments and information with respect to how GEICO arranges its relationship with its third party vendors, including Safelite Solutions. *Id.* at ¶ 20.

Safelite Solutions has provided additional support regarding the confidential and proprietary nature of the Safelite Agreements confirming that it considers the agreements confidential and proprietary and protects them from disclosure. *See* Safelite Declaration, ¶ 5.

*2. Training Student Manuals*

As set forth in the May 24 Foskey Declaration, the Student Manuals disclose two types of confidential commercial information – (1) GEICO's processes for handling claims in general and glass claims in particular; and (2) GEICO's methods of training its employees. May 24 Foskey Declaration, ¶ 16. GEICO General considers the information contained in its Student Manuals to be trade secret and confidential commercial information that has significant value, as the

processes and procedures utilized by GEICO in training its employees and servicing glass claims provide GEICO a competitive advantage over its competitors. *Id.* at ¶ 13.

The May 24 Foskey Declaration further states that GEICO General has taken measures to prevent the disclosure of the contents of the Student Manuals to anyone other than those who have been selected to have access for limited purposes, and GEICO General continues to limit access to the Student Manuals. *Id.* at ¶ 26. Access to the Student Manuals within GEICO General is limited to those persons with a need for access. *Id.* at ¶ 10.

Each page of the Student Manuals is marked "Confidential" and GEICO General's computer systems do not allow for downloading, forwarding, or printing of the Student Manuals by end users. *Id.* The Student Manuals are not publicly available. *Id.* at ¶ 28. As set forth in the May 24 Foskey Declaration, copies of the Student Manuals may only be obtained by management through a specific request for a justifiable purpose, such as complying with a court order or discovery obligation. *Id.* at ¶ 10. When copies have been provided in limited circumstances, GEICO General always requires that the Student Manuals be designated and protected as confidential. *Id.*

Disclosure of GEICO's Student Manuals to third parties could cause serious immediate harm to GEICO and to its competitive position in the industry because it would provide GEICO's competitors with GEICO's confidential and proprietary glass claims handling and training processes.

Moreover, it would reveal screen-by-screen detail of the SV2 computer system for setting appointments. May 24 Foskey Declaration, ¶¶ 20- 22. Safelite Solutions has provided further support for the confidential and proprietary nature of the detailed SV2 system information that Plaintiff intends to file. *See* Safelite Declaration, ¶ 4.

   3. *Reports Attached to March 16 Foskey Declaration.*

      a. *GEICO's F&R Report*

As set forth in the May 24 Foskey Declaration attached as Exhibit 2, GEICO General provided a copy of an exemplar of a report generated from GEICO General's confidential claims data summarizing GEICO's claims experience as Exhibit A to the March 16 Foskey Declaration. *See* May 24 Foskey Declaration, ¶ 24 (the March 16 Foskey Declaration was filed by Plaintiff under Dkt. 68-22, PageID 1678-83). This exemplar F & R Report was designated "Confidential," because it "shows, at a national level, summary results for 'Non-Network' glass shops, which are shops that are neither Safelite Fulfillment owned shops nor network affiliate shops that have agreed to charge the rate approved by GEICO." *Id.* (quoting March 16 Foskey Declaration, ¶ 5).

The May 24 Foskey Declaration establishes that the F&R Report contains extremely sensitive commercial information. *Id.* Specifically, it summarizes claims experience data over a multi-year period using data and systems that can only be generated with access to GEICO General's complete claim history. *Id.* This information has significant value to GEICO General and provides it with an advantage or an opportunity to obtain an advantage over those who do not know or use it. *Id.* at ¶ 25.

GEICO General has taken measures to prevent the disclosure of its glass claims data and reports to anyone other than those who have been selected to have access for limited purposes, and the company continues to take such measures. *Id.* at ¶ 26. Generally, such reports are restricted to GEICO General managers and officers with responsibility over glass claims. *Id.* Disclosure of GEICO General's claims data or reports to third parties could cause serious immediate harm to GEICO and to its competitive position in the industry. Specifically, GEICO's claims data and reports generated from that data would reveal GEICO's collective

9

experience with respect to billing, payments, claims trends, and other information valuable to GEICO's competitors who, as a general practice, protect such information from disclosure to GEICO and the public. *Id.* at ¶¶ 29- 31.

   b. *Safelite Peer Report*

As set forth in the May 24 Foskey Declaration, GEICO General provided a copy of an exemplar of a peer report provided by Safelite Solutions to GEICO as Exhibit B to Mr. Foskeys Declaration dated March 16, 2017. *Id.* at ¶ 32. This exemplar peer report contains comparative pricing levels of other insurance companies or fleet purchasers of services provided without identifying the name of the entity other than GEICO General. *Id.*

The May 24 Foskey Declaration establishes that the peer reports provided to GEICO are not publicly available, and GEICO General limits distribution of this peer report to persons with management responsibility over glass claims. *Id.* at ¶ 33. GEICO General further understands that the information contained in the peer reports is deemed proprietary and confidential by Safelite Solutions with significant value that would cause Safelite Solutions irreparable harm by the loss of competitive advantage in its marketplace. *Id.* at 36. Accordingly, GEICO has treated the peer reports as confidential. *Id.*

Safelite Solutions has provided further support for the confidential and proprietary nature of this report. *See* Safelite Declaration, ¶ 6.

NO OTHER MEANS ARE AVAILABLE OR<br>SATISFACTORY TO PRESERVE GEICO GENERAL'S INTERESTS

Plaintiff has determined that the subject materials are relevant to its Motion for Class Certification. GEICO General produced these materials in good faith under Court order or pursuant to the Confidentiality Agreement. However, GEICO General is not in control of what material Plaintiff deems relevant to its motion. Both of these factors weigh in favor of sealing

the filed documents. Courts have found, "the fact that [Defendants] produced the confidential documents, at least in part, based upon [their] reliance upon the agreed to Confidentiality Order, weighs in favor of keeping those documents sealed." *Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 665 (M.D. Fla. 2014) (quoting *In re Denture Cream Products Liab. Litig.*, 09-2051-MD, 2013 WL 214672, at *10 (S.D. Fla. Jan. 18, 2013)).

Moreover, since Plaintiff is filing the documents, GEICO General is not able to control what materials Plaintiff chooses to file or redact. Accordingly, a lesser means of preservation of confidentiality will fail to preserve the confidentiality and sensitive nature of this information, along with preventing the Court from considering its effect on the issues raised in the Class Certification Motion. Therefore, filing this information under seal will serve to fully protect GEICO General's interests and provide the Court with the full scope of the information described above. *See MEDAI, Inc. v. Quantros, Inc.*, No. 12-cv-840, 2012 WL 2512007, at *2 (M.D. Fla. June 29, 2012) (quoting *Romero v. Drummond Co.*, 480 F. 3d 1234, 1245 (11th Cir. 2007) (holding that there is no "'less onerous' alternative to sealing the documents that would ensure its contents remain confidential while allowing the Court to review it as necessary to reach a decision on the merits.").

## PROPOSED DURATION OF THE SEAL

Defendant respectfully requests that the documents subject to this Motion remain under seal indefinitely until further order of the Court. *See Teledyne Instruments, Inc. v. Cairns*, No. 12-cv-854, 2013 WL 5874584, at *2 (M.D. Fla. Oct. 31, 2013) (sealing "non-public financial data" until further order of the court given the sensitive nature of the sealed information that was important to the business of one of the parties).

MEMORANDUM OF LAW

The analysis of a motion to seal filed in connection with substantive issues begins with the recognition that "'[t]he operations of the court and the judicial conduct of judges are matters of utmost public concern,' and the integrity of the judiciary is maintained by the public's right of access to court proceedings." *Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2015 WL 5307729, at *1- 5 (M.D. Fla. Sept. 10, 2015) (quoting *Romero v.*, 480 F. 3d at 1245. This "common law right" includes the right to "inspect and copy judicial records and public documents." *Id.* (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13 (11th Cir. 2001)); *see also In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (citations omitted).

The right to access judicial documents is not absolute, and the exercise of judicial discretion to protect information "should be informed by a sensitive appreciation of the circumstances that led to the production of the particular document in question …. [T]he common-law right of access requires a balancing of competing interests." *In re Photochromic Lens Antitrust Litigation,* No. 10-md-02173, 2013 WL 12156446, at *1, n. 3 (quoting *F.T.C. v. AbbVie Prods. LLC*, 713 F. 3d 54, 62 (11th Cir. 2013)); *Chicago Tribune Co*., 263 F. 3d at 1311).

And "[a] party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Romero*, 480 F. 3d at 1246 (citing *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)). As the Eleventh Circuit instructed in *Romero*:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the

> reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246; *see also In re Alexander Grant & Co. Litig.*, 820 F.2d at 356.

Courts have applied this balancing test and held that "a company's interest in the privacy of its financial records and the terms of confidential agreements ... often outweigh the public right of access." *MEDAI, Inc.*, 2012 WL 2512007, at *2 (quoting *Graphic Packaging Int'l v. C.W. Zumbiel*, No. 10-cv-891, 2010 WL 6790538, at *1 (M.D. Fla. Oct. 28, 2010)); *Pinnacle Towers LLC v. Airpowered, LLC*, No. 15-cv-81, 2015 WL 5897524, at *1- 2 (M.D. Fla. Oct. 7, 2015).

Federal courts in this (and other Florida) districts have further held that filing under seal is warranted to protect a party from the unnecessary disclosure of confidential business and financial information to its competitors.[4] *See 3Lions Publishing, Inc. v. Juniper Networks, Inc.*, No. 14-cv-1707, 2015 WL 12850602, at *1 (M.D. Fla. Mar. 3, 2015) (M. Scriven presiding) (holding that a party established good cause to seal "a confidential internal document, its document retention policy" pursuant to Local Rule 1.09(a)); *MEDAI, Inc.*, 2012 WL 2512007, at *2 (sealing a confidential product licensing agreement submitted in a preliminary injunction proceeding and holding that "courts have found that 'a company's interest in the privacy of its

---

[4] *See also, e.g., U.S. ex rel. Greg Westfall, et al. v. Axiom Worldwide, Inc., et al.*, No. 8:06-cv-571, 2008 U.S. Dist. Lexis 104725, at *12 (M.D. Fla. Dec. 19, 2008) (sealing sales training manual and a partial client list to protect from disclosure to a competitor); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 11-cv-1373, 2013 WL 1212818, at *3 (M.D. Fla. March 25, 2013) (sealing an exhibit that was "a compilation of ASDI's private, confidential financial information," finding "that there is a reasonable likelihood that public disclosure of [the exhibit] could injure ASDI."); *Wallace v. NCL (Bahamas), Ltd.*, 271 F.R.D. 688, 694 (S.D. Fla. 2010) (sealing exhibits that "are primarily excerpts from Defendant's proprietary ship operations manual and [] budgeted revenue targets.")

13

financial records and the terms of confidential agreements ... often outweigh the public right of access.'"; *see also ThyssenKrupp Elevator Corp. v. Hubbard*, No. 13-cv-00202 (M.D. Fla. Aug. 21, 2013) (sealing a stock purchase agreement deemed confidential under the parties' confidentiality agreement because disclosure "may destroy the competitive advantage that comes with keeping such information confidential."); *Local Access, LLC*, 2015 WL 5307729, at *1- 5 (sealing "confidential and proprietary business information which includes business plans, pricing information, and technical capabilities, which if made public, could impact and injure [the party's] business operations").

As set forth in the sections above, GEICO expended a significant amount of time and resources to develop processes and systems that allow it to operate more efficiently and provide better service to its insureds than its competitors. GEICO considers these documents to be confidential trade secret and commercially sensitive information, proactive steps are taken to restrict access to necessary levels of internal management, and this information contains information that provides GEICO General with a competitive advantage in the insurance marketplace. Disclosure of this information will cause irreparable harm because it will disclose to GEICO's competitors GEICO's relationships with its vendors, its training and customer service processes, its computer systems processes, as well as its glass claims experience obtained from internal claims data and compilations of that data. All of this is specifically set forth in the sections above and the declarations submitted in support of this Motion.

There is no less burdensome alternative to sealing these materials that would ensure that their confidential contents remain confidential, while still allowing Plaintiff to introduce the documents as exhibits to its Class Certification Motion. Accordingly, GEICO General respectfully requests that the Court enter an order requiring Plaintiff to file the information

described above and proposed Exhibits 5, 6, 8, 9, 10, 11, 15-1, and 15-2 to the Class Certification Motion under seal.

### Local Rule 3.01(g) Certification

Counsel for GEICO General certifies that the parties have conferred regarding the relief sought in this motion pursuant to Local Rule 3.01(g). Plaintiff's counsel has requested that the Court be informed that they cannot agree or consent to GEICO General's motion to seal because, among other things, Plaintiff's counsel do not have access to the information outside the scope of this litigation from which they can make representations regarding the factors to be considered for sealing, and have not been provided any information to make such a determination at this time. Pursuant to the parties' Confidentiality Agreement dated September 30, 2016, Plaintiff is "deemed to not consent to, but shall not oppose" GEICO General's motion to seal.

WHEREFORE, GEICO General requests that the Court enter an order requiring Plaintiff to file the above-referenced exhibits to its Class Certification Motion under seal.

Dated: May 26, 2017

                Respectfully Submitted,

                */s/ E.K. Cottrell*
                John P. Marino (Florida Bar No. 814539)
                Lindsey R. Trowell (Florida Bar No. 678783)
                Edward K. Cottrell (Florida Bar No. 013579)
                SMITH, GAMBRELL & RUSSELL, LLP
                50 North Laura Street
                Suite 2600
                Jacksonville, Florida 32202
                Phone: (904) 598-6100
                Facsimile: (904) 598-6204
                Email: jmarino@sgrlaw.com
                       ltrowell@sgrlaw.com
                       ecottrell@sgrlaw.com

                *Attorneys for Defendant*
                *GEICO General Insurance Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 26, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

　　　　　　　　　　　　　　　　　　　　*/s/ E.K. Cottrell*　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　Attorney