UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIP AUTO GLASS, INC., individually, as
assignee, and on behalf of all those similarly
situated

       Plaintiff,                      CASE NO.: 8:16-CV-02012-MSS-JSS

       vs.                            CLASS ACTION

GEICO GENERAL INSURANCE COMPANY,

       Defendant.

_____ \

### DEFENDANT GEICO GENERAL INSURANCE COMPANY'S
### OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendant, GEICO General Insurance Company ("GEICO General"), respectfully submits this

Memorandum in Opposition to Plaintiff, VIP Auto Glass Inc.'s ("VIP"), Motion for Class Certification

(Dkt. 66) ("Motion for Certification").

### SUMMARY

VIP brought this case (and asks this Court to appoint it as a class representative) as the

assignee of an individual insured by GEICO General named Derryl Jones. VIP represented to GEICO

General that it obtained a written assignment of benefits from Mr. Jones. And VIP has repeatedly

made this same affirmative representation, and actually presented a purported assignment, to this

Court.

VIP has made this unequivocal representation in its Complaint, Amended Complaint, Motion

for Remand, Motion to Compel, verified interrogatory responses, and sworn deposition testimony. And

VIP continues to make this representation to this Court, and attempts to rely upon this purported

assignment of benefits, in its Motion for Certification.

However, VIP's numerous affirmative statements and representations to both GEICO General and this Court are false. Mr. Jones never signed and provided an assignment of benefits to VIP. Mr. Jones himself recently confirmed that he never signed an assignment, and that the purported assignment that VIP has repeatedly put before this Court is a forgery.[1]

In addition to having made false statements and representations to both GEICO General and this Court, VIP further fails to meet its burden for class certification for several reasons:

1. *VIP does not have standing to bring any claims, much less represent a class.* A district court must determine that the proposed class representative has standing before even beginning a Rule 23 analysis. VIP fraudulently attempted to acquire standing through a forged assignment. Since VIP actually has no valid assignment, it has no standing to bring any claims, much less any class claims. Class certification must be denied on this ground alone.

2. *The proposed class is not ascertainable.* The proposed class in this case includes windshield repair facilities that "own an assignment of benefits from the GEICO insured" and "provided windshield repair and/or replacement services to the GEICO insured." Whether a repair facility owns an assignment of benefits from a GEICO General insured can only be ascertained through individual factual inquires. There can be no clearer example than in this very case, where an individual factual inquiry revealed that VIP presented a forged assignment to both GEICO General and this Court and, in fact, does not own an assignment from Mr. Jones. Individual inquiries would also be required to ascertain whether a repair facility actually provided the windshield repair or replacement services.

---

[1] GEICO reserves the right to seek sanctions and other appropriate remedies based upon this improper conduct.

3.     *VIP is not an adequate class representative.*  VIP owns no valid assignment from Mr. Jones.   VIP is therefore not even a member of the class it seeks to represent.   VIP is further inadequate because it is subject to several defenses, including lack of standing, fraud and misrepresentation, estoppel and violation of the Florida Motor Vehicle Repair Act, Sections 559.901-559.9221, Fla. Stat. (the "Repair Act").[2]  Moreover, VIP has made misrepresentations in several filings with this Court, presented a forged assignment to this Court, given false interrogatory responses in this case, given false deposition testimony in this case, and has similarly submitted forged assignments on other claims. VIP therefore lacks the credibility necessary to serve as a class representative.

4.     *The commonality and typicality requirements are not satisfied.*  Commonality is not satisfied when liability is dependent upon individualized proof.   Similarly, typicality is not satisfied when the plaintiff's claims arise from a different course of conduct than the claims of the absent class members.   VIP cannot establish commonality or typicality because there are unique and significant issues applicable to both its claims and the claims of each purported class member.   These include whether each class member has standing through a valid assignment of benefits (which VIP does not), the rights conveyed and/or released through different forms of assignments, compliance with the Motor Vehicle Repair Act, whether the insured knew of or agreed to any particular pricing, what the insured was told (verbally or in writing) regarding his or her liability for payment, defenses based upon misrepresentations to GEICO General or its insureds, defenses based upon whether the repair shop

---

[2] The Repair Act imposes specific disclosure requirements on windshield repair shops' estimating and billing processes.  It specifically applies to "shops doing glass work." § 559.903, Fla. Stat.  It requires specific language and information be set forth in estimates. § 559.905, Fla. Stat. Moreover, it precludes a windshield repair company from recovering additional amounts at law or equity when the Repair Act has been violated.  *See Osteen v. Morris*, 481 So. 2d 1287 (Fla. 5th DCA 1986); *Gonzalez v. Tremont Body and Towing, Inc.*, 483 So. 2d 503 (Fla. 3d DCA 1986).  In fact, the Repair Act authorizes the recovery against the repair shop of any amounts paid regardless of the value of the repair.  *Id.*

knew what GEICO General would pay before performing the repair, and whether the subject windshield repair was even actually performed. These facts will be different in every claim, and can only be litigated on a claim-by-claim basis.

5. *The predominance and superiority requirements are not satisfied.* VIP has also failed to show that common questions of law or fact predominate over questions affecting individual class members, or that a class action is superior. Many of the same issues that defeat commonality and typicality (outlined above) also defeat predominance. Nor would a class action be superior. There are thousands of individual windshield claims pending in Florida courts across the state, and plenty of lawyers willing to file them. In fact, VIP itself has filed several individual windshield claims against GEICO General *after* filing this case. It cannot be seriously argued that a class action would be superior when the proposed class representative - - itself - - initiates and chooses to litigate on an individual basis *after* filing a purported class action.

6. *Certification under Rule 23(b)(2) is not appropriate.* The primary relief sought in this case is money damages. Both the purported declaratory and injunctive relief claims seek judgments that would require the payment of money damages which are not incidental. Moreover, Count III of VIP's Amended Complaint expressly seeks money damages for a proposed Rule 23(b)(3) class. Certification under Rule 23(b)(2) is not appropriate in these circumstances.

VIP falls far short of meeting its burden to certify a class and be appointed as a class representative. VIP's Motion for Certification should therefore be denied.

## BACKGROUND

VIP brought this case, and asks this Court to appoint it as a class representative, based upon a windshield replacement claim that it billed to GEICO General in February 2016.  The vehicle was owned by a GEICO General insured named Derryl Jones.  To be able to bill GEICO, and in order to have standing to bring this case, VIP must have a valid assignment of benefits from Mr. Jones.

I.      **VIP's Affirmative Representations and Sworn Testimony Regarding the Alleged Assignment.**

VIP attaches a work order to its Amended Complaint.  This work order contains both an assignment of benefits and a purported disclosure under the Repair Act.  Amended Complaint, Ex. B (Dkt. 47-2).  This document appears to have been signed and initialed by Mr. Jones.

VIP affirmatively represents to this Court in several filings that Mr. Jones signed and provided the purported assignment of benefits.  These affirmative statements and representations include:

- VIP's Class Action Complaint and Demand for Jury Trial, ¶ 17 (Dkt. 2):  "Thereafter, the Insured Customer selected Plaintiff to repair and/or replace the windshield, executed an assignment of his insurance benefits in favor of Plaintiff, and notified Defendant of same".

- VIP's Motion for Remand, p. 3 (Dkt. 14):  "Mr. Jones assigned his insurance benefits to Plaintiff."

- VIP's Motion to Compel, pg. 2 (Dkt. 43):  "Mr. Jones executed an assignment of his GEICO insurance benefits in favor of VIP . . ."

- VIP's First Amended Class Action Complaint and Demand for Jury Trial, ¶ 15 (Dkt. 47):  "Thereafter, the Insured Customer selected Plaintiff to repair and/or replace the windshield, executed an assignment of his insurance benefits in favor of Plaintiff, and notified Defendant of same.  A complete, accurate, and authentic copy of the assignment of benefits is attached as **Exhibit B**."

VIP continues to make the same representation in its Motion for Certification, advising the Court that "Mr. Jones assigned to VIP the right to receive payment directly from GEICO and pursue legal action if GEICO failed to pay under the terms of his policy."  *See* Motion for Certification, p. 4

VIP's owner and corporate representative, Melvin Figueroa Rivera, similarly provided a sworn interrogatory response verifying that "Mr. Jones contracted with Plaintiff to repair his windshield for the price charged by Plaintiff, and Mr. Jones assigned his insurance benefits to Plaintiff." *See* Ex. 7 of Defendant's Proffer of Evidence in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification ("Proffer") (Dkt. 71), Plaintiff's Supplemental Answers to Interrogatories ("Supp. Answers to Interrogatories") at ¶ 9.

Mr. Rivera also recently gave a deposition in this case. Mr. Rivera affirmatively testified under oath that Mr. Jones signed the purported assignment of benefits, and that he personally obtained Mr. Jones' signature and initials on the document:

> Q.     I'm showing you what's been marked Exhibit 8 to your deposition. What is the first page of Exhibit 8?
> A.     That's my work order with assignment of benefits.
> Q.     So at this time, this is your work order with an assignment of benefits on it; correct?
> A.     Correct.
> Q.     Is that Mr. Jones's signature on the bottom?
> A.     Yes, sir.
> Q.     Did you obtain that signature from him?
> A.     Yes, sir.
>
>
> Q.     So when you say didn't want a written estimate, are those Mr. Jones's initials right there that says, "I do not request a written estimate"?
> A.     Yes, sir.
> Q.     You obtained those initials from Mr. Jones on this document?
> A.     Yes, sir.

*See* Ex. 6 to Proffer, Deposition of Melvin Figueroa Rivera ("Rivera Dep.") at 65:14-24; 67:21-68:2

**II.** **VIP's Affirmative Representations to this Court are False – the Assignment that VIP Presented to this Court is a Forgery.**

Mr. Jones has recently confirmed through deposition testimony and a sworn affidavit that the purported signature and initials contained on the apparent assignment of benefits that VIP presented to this Court are forgeries. Mr. Jones confirmed:

> Q. Sir, I'm showing you what's been marked as Exhibit 1 to your deposition, which is a three-page document. Could you take a look at the first page of Exhibit 1?
> A. Uh-huh.
> Q. Did anybody from VIP ever show you this document?
> A. No.
> Q. If you look to the bottom of the first page of Exhibit 1, there appears to be a signature. Mr. Jones, is that your signature on this document?
> A. No.
> Q. If you look up just above what appears to be a signature, there appear to be some initials on that document Mr. Jones, are those your initials on this document?
> A. No.
> Q. You did not initial this document, did you?
> A. No.
> Q. You did not sign this document, did you?
> A. No.

*See* Ex. 8 to Proffer, Deposition of Derryl Jones ("Jones Dep.") at 9:12-10:7. Mr. Jones further confirms in his affidavit that:

> The signature which appears on the bottom of the first page of the attachment [the VIP work order], below an apparent assignment of benefits, is not my signature. The correct spelling of my name is D-E-R-R-Y-L. I have never signed my name with one "R." Also, the initials "DJ" on that page were not made by me. I never authorized anyone to sign my name or initials on that document. To the extent the signature on the Invoice is represented as my signature, it is a forgery.

*See* Ex. 1 to Proffer, Affidavit of Derryl Jones ("Jones Affidavit.") at ¶ 8. A copy of the Jones Affidavit is also attached as Exhibit 2 to the Jones Deposition. *See* Ex. 8-2 to Proffer. Accordingly, Mr. Jones never saw or signed the purported assignment, and never waived his right to an estimate.

### III.      VIP Has Also Submitted Other Forgeries.

The claim at issue in this case is not the only claim where VIP has submitted a forged assignment.  GEICO General has uncovered additional instances.

For example, Richard and Kimberly Riley insured their vehicle with GEICO General.  Mrs. Riley attested that on or about December 30, 2015, she brought her vehicle into a dealership for an oil change.  The dealership's service advisor told her she had a chip in the windshield and that the dealership could replace it for free.  She never had any interaction with VIP, never saw a work order or invoice, and never signed any document.  *See* Ex. 2 to Proffer, Affidavit of Kimberly K. Riley ("Kimberly Riley Affidavit").  Mr. Riley similarly attested that he never saw or signed any such document.  *See* Ex. 3 to Proffer, Affidavit of Richard P. Riley ("Richard Riley Affidavit").

However, VIP submitted a work order to GEICO General for replacement of Mr. and Mrs. Riley's windshield. This work order purports to include a waiver of the right to an estimate initialed by Mr. Riley, as well as his signature on an assignment of benefits.  The signature and initials on the work order were forged.  *Id.* at ¶ 7.

Denise Bushee is also an individual insured by GEICO General.  Ms. Bushee visited a local dealership for routine maintenance.  The dealership advised Ms. Bushee that her windshield was damaged and that it could be replaced at no charge.  Ms. Bushee agreed to the replacement on these terms.  She similarly never had any interaction with VIP, never saw a work order or invoice, and never signed any document.  *See* Ex. 4 to Proffer, Affidavit of Denise Bushee ("Bushee Affidavit")

However, VIP submitted a work order to GEICO General for replacement of Ms. Bushee's windshield. This work order purports to include a waiver of the right to an estimate initialed by Ms.

Bushee, as well as her signature on an assignment of benefits. The signature and initials on the work order were forged. *Id.* at ¶ 8.

### IV. Mr. Jones Never Agreed to VIP's Price and VIP Confirmed that No Additional Amounts are Owed.

VIP alleges in its pleadings and argues in its briefing that Mr. Jones agreed to the price Plaintiff invoiced GEICO. Mr. Rivera also stated this in VIP's Supplemental Interrogatory responses. *See* Ex. 7 to Proffer (Supp. Answers to Interrogatories) at ¶ 9. VIP further tells the Court in its pleadings that Mr. Jones remains liable to VIP for the additional amount of money that VIP seeks in this case.

However, Mr. Rivera admitted just the opposite during his recent deposition. Mr. Rivera admitted that Mr. Jones never saw the invoice document and pricing was never discussed with Mr. Jones. Even more tellingly, Mr. Rivera confirmed that he told Mr. Jones that he would owe nothing. *See* Ex. 6 to Proffer (Rivera Dep.) at 68:3-10; 71:18-25.

Accordingly, even if there was such a thing as a "defacto deductible" and VIP actually owned a valid assignment, VIP would still have no claim in this case. VIP has confirmed that Mr. Jones owes nothing. Because the insured owes nothing, VIP similarly has no claim for breach of contract.[3]

<u>ARGUMENT</u>

To certify a class action, the named plaintiff must have standing, and the putative class must "satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.,* 621 Fed. Appx. 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)); *see*

---

[3] Moreover, the forged assignment contains language that specifically releases the insured. So even if VIP had a valid assignment (which it does not), it would nevertheless still have no claim in this case. *See* Amended Complaint, Ex. B.

*Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b).")

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997); *see also Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000). The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis added).

"A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009)(quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)). And courts "can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharmaceuticals Inc.,* 350 F.3d 1181, 1188, n.15 (11th Cir. 2003). This analysis does not permit courts to be "generous or forgiving" of failures of proof or to engage in speculation as to Rule 23's requirements. *Vega,* 564 F.3d at 1269.[4]

---

[4] VIP points the Court to the wrong standard. The Motion for Certification incorrectly advises that "[a]ny doubt should be resolved in favor of certification." *See* p. 14. But the Eleventh Circuit specifically rejected that notion in *Brown v. Electrolux Home Products, Inc.,* 817 F. 3d 1225, 1233-34 (11th Cir. 2016), holding that "[t]he parties are correct that the district court misstated the law when it said that it 'resolves doubts related to class certification in favor of certifying the class.' The party seeking class

VIP's Motion for Certification makes efforts to disparage GEICO General with inaccurate statements and assumptions about GEICO General's relationship with Safelite. VIP also goes to great lengths to attempt to support its novel and legally deficient "defacto deductible" theory.[5] Finally, VIP argues the merits of its alternative position that the Limit of Liability contained in GEICO General's policy should be interpreted to require GEICO to pay any amount that a repair shop chooses to charge.[6]

But what VIP's Motion for Certification does not do is meet its burden for class certification. Instead, VIP seeks to mislead the Court with a forged assignment, and fails to meet its burden.

---

certification has the burden of proof. And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'"

[5] VIP does not contend that GEICO General applies an actual deductible. It acknowledges that GEICO General does not do so. Rather, VIP attempts to persuade the Court to ignore the plain language of Section 627.7288, Florida Statutes, which expressly applies only to the "deductible provisions" of a policy. "Deductible" is a well-established term that refers exclusively to amounts the insured is responsible for before an insurer's duty to pay ripens. As the Florida Supreme Court has stated, "The functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen." *Int'l Bankers Ins. Co. v. Arnone,* 552 So. 2d 908, 911 (Fla. 1989) (emphasis added). Even the case that VIP cherry picks a phrase out of to encourage the Court to depart from the well understood meaning of "deductible" is completely contrary to VIP's position. *Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.,* 874 So. 2d 26, 33 (Fla. 2d DCA 2004). The *Gen. Star* court finds the term "deductible" has a plain meaning, quotes the above *Arnone* definition, and adds: "A 'deductible' is 'a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against.'" *Id.* (quoting Merriam-Webster's Collegiate Dictionary 471 (deluxe ed.1998))(emphasis added). Under VIP's novel theory, any application of a limitation of liability in an insurance policy would be deemed a deductible.

[6] Only two Florida Circuit Courts, both sitting in their appellate capacity, have ruled on this issue. Both Circuit Courts of Appeal rejected the same position that VIP takes in this case, and held that the Limit of Liability clearly and unambiguously provided that GEICO's obligation would not exceed the "price [GEICO] can secure from a competent and conveniently located repair facility." *See Superior Auto Glass of Tampa Bay, Inc. a/a/o Jeb Shaffer v. GEICO General Insurance Co.,* Appeal No. 2014-AP-0007-WS (Fla. 6th Cir. App. Div. 2014) (Pasco County); *GEICO Indemnity Co. v. Superior Auto Glass of Tampa Bay, Inc. a/a/o Suzanne Renczkowski,* 23 Fla. L. Weekly Supp. 151b (Fla. 5th Cir. Ct. 2016).

I.      **VIP Lacks Standing.**

"It is well-settled in the Eleventh Circuit that prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 679 (S.D. Fla. 2004) (citing *Wolf Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing.")). Indeed, "[o]nly after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin*, 823 F.2d at 1482.

As established above, VIP has no valid assignment. Instead, it has put a forged assignment before this Court. VIP therefore lacks standing to assert any claims, much less assert claims in a representative capacity as a class representative. The inquiry need go no further. VIP's Motion for Certification must be denied for this reason alone.

II.      **The Proposed Class is Not Ascertainable.**

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (*quoting Little*, 691 F.3d at 1304 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970))). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014)(*citing Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009)). These "objective criteria" should be "administratively feasible," meaning

the identification of class members should be "a manageable process that does not require much, if any, individual inquiries." *Bussey*, 562 Fed. Appx. at 787 (citations omitted) (reversing district court decision finding ascertainability satisfied when a class was identified by referring to the defendant's records).

Class certification is properly denied if a plaintiff fails to demonstrate that the putative class is clearly ascertainable. *See Walewski v. Zenimax Media, Inc.*, 502 Fed. Appx. 857, 861 (11th Cir. 2012) (affirming denial of class certification because class was not adequately defined or clearly ascertainable); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult.").

VIP acknowledges that a service provider cannot assert a claim for coverage benefits, as a purported assignee, without a valid assignment of benefits. *See Hartford Ins. Co. v. St. Mary's Hosp., Inc.*, 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000). Accordingly, a requirement for membership in the class that VIP proposes is that the purported class member **"own an assignment of benefits from the GEICO insured."** Motion for Certification, p. 13.

Whether each separate repair facility "owns an assignment of benefits" can only be determined through individual factual inquires for each and every case. That could not be more clear than in this case, where an individual factual inquiry into VIP's proposed representative claim revealed that VIP

itself presented a forged assignment to both GEICO General and this Court and, in fact, does not "own an assignment of benefits from the GEICO insured."[7]

It goes without saying that when an individual inquiry is necessary to determine whether the proposed class representative is a member of the proposed class (and ultimately shows that it is not), the same detailed factual inquiry would be necessary to determine class membership in connection with each separate claim.

VIP argues that the class can be ascertained because GEICO General has already done so as reflected in the Antonacci Declaration. Motion for Certification, pp. 16-17. But that declaration only addresses the class as defined by VIP for subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). For CAFA jurisdiction, "'class members' include 'persons (named or unnamed) who fall within the definition of the *proposed* or certified class.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

Accordingly, GEICO General took VIP's class definition as it was presented for jurisdictional purposes. The only consideration was therefore whether some form of an alleged assignment had been submitted. But for class membership and certification, the assignment must be valid. Forgeries will not suffice. This is particularly true where, as in this case, the plaintiff seeks an award of damages to each class member for each of its claims. A shop that has submitted a forged assignment (like VIP in this case) has no legal entitlement to obtain a judgment or be awarded damages.

Moreover, "[a] Plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in

---

[7] The adequacy of an assignment is a legal and factual issue that is routinely litigated on an individual basis. *See, e.g., Progressive Express Ins. Co. v. Hartley,* 21 So. 3d 119, 121 (Fla. 5th DCA 2009); *Progressive Express Ins. Co. v. McGrath Cmty. Chiro.,* 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005).

fact useful for identification purposes, and that identification will be administratively feasible." *Karhu*, 621 Fed. Appx. at 948. There is nothing in GEICO General's records that will show whether a proposed class member owns a valid assignment of benefits. That can only be determined on an individual basis.

There are similar incidents of shops submitting fraudulent claims where the repair work was never actually done. Accordingly, whether a repair facility actually "provided windshield repair and/or replacement services to the GEICO insured" can similarly only be determined through separate individual inquires.

Due process requires that GEICO be provided the opportunity to verify the authenticity of assignments and whether work was actually done for each claim before it can be adjudicated. That can only be determined upon an individualized inquiry and possible adjudication of disputed factual issues. Thus, there is no administratively feasible way to ascertain class membership in this case.

III.     VIP is Not an Adequate Class Representative.

The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. See *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158, n.13, 102 S.Ct. 2364, 2370-2371, n.13, 72 L.Ed.2d 740 (1982). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 4*03, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)).

- *VIP is not a member of the class it seeks to represent.*

As established above, VIP does not "own an assignment from the GEICO insured." VIP therefore cannot be an adequate class representative in this case because it is not even a member of the class it seeks to represent.

- *VIP is subject to several individual defenses.*

"A plaintiff cannot be an adequate representative of the class if the plaintiff is subject to a defense that couldn't be sustained against other class members." *See Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 2017 WL 2406143, *9 (N.D. Ill. June, 2, 2017). "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *CE Design, Ltd. V. King Architectural Metals, Inc.* 637 F.3d 721, 726 (7th Cir. 2011).

VIP submitted a forged legal document in the representative claim in this case. VIP's owner and corporate representative approved a complaint and amended complaint falsely alleging that Mr. Jones had signed and initialed the document. VIP provided verified interrogatories stating that Mr. Jones assigned his rights to VIP, and Mr. Rivera testified under oath that he personally obtained Mr. Jones's signature and initials on the assignment.

Mr. Jones has confirmed that the signature and initials are forgeries. Accordingly, GEICO General has clear viable defenses including (among others) lack of standing, violation of the Repair Act, estoppel, fraud, and insurance fraud. GEICO may also have affirmative claims or counterclaims

against VIP based upon its fraudulent activity. VIP cannot be an adequate class representative under these circumstances.

- *VIP lacks the required credibility to serve as class representative.*

"A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *CE Design,* 637 F.3d at 726. VIP's submission of forged documents, as well as false discovery responses and testimony about those documents, completely undermines VIP's credibility. VIP's allegation that Mr. Jones agreed to pay the price charged to GEICO General and that Mr. Jones is legally liable to VIP is similarly egregious. VIP's corporate representative admitted in his deposition that he never showed any pricing documents to Mr. Jones. Indeed, his only discussion with Mr. Jones about pricing was his representation that the work would not cost Mr. Jones anything.

These false allegations in federal court filings and false testimony under oath preclude VIP from representing any class. The concern goes beyond just the interests of the purported class members. The record in this case shows VIP's lack of candor to the Court, dishonesty in discovery, and false deposition testimony.

These types of concerns very recently caused another district court to deny certification because the proposed class representative made false representations regarding facts that would have been harmful to their case. *See Physicians Healthsource,* 2017 WL2406143 at * 9-15; s*ee also Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir. 1983) (refusal to answer discovery questions and inaccurate testimony rendered proposed class representative inadequate); *Armour v. City of Anniston,* 89 F.R.D. 331, 332 (N.D. Ala. 1980), *aff'd,* 654 F.2d 382 (5th Cir. 1981) (finding proposed representative inadequate, reasoning "[c]ourts have looked to such factors as honesty, conscientiousness and other

affirmative personal qualities to determine whether a named individual is a proper class representative.")

- *VIP has conflicting interests because it has numerous separate individual lawsuits against GEICO General.*

VIP filed eight individual windshield replacement lawsuits against GEICO General in Florida state courts before filing this putative class action. Subsequent to filing this case, VIP has filed an additional fifteen individual windshield replacement lawsuits against GEICO General. Incredibly, nine of those were filed on the same day that VIP filed its Motion for Class Certification. These separate individual cases all remain pending. *See* Ex. 5 to Proffer, Declaration of Susanna Eberling ("Eberling Declaration") at ¶ 6-7.

Yet, VIP has also attempted to define pending lawsuits out of the class. Accordingly, VIP has created a conflict between itself and the proposed class members. VIP seeks an adjudication of rights that would be binding on class members, while at the same time shielding itself from that adjudication by filing separate lawsuits. This creates an irreconcilable conflict of interest between VIP, as the proposed fiduciary, and the proposed class it seeks to represent.

IV.     The Commonality and Typicality Requirements are Not Satisfied.

Under Rule 23(a), VIP must prove the existence of common questions of law or fact and that its claims are typical of the claims and defenses of the absent class members. *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir. 1996) (internal punctuation and citation omitted). The commonality requirement cannot be satisfied when, as in this case, liability is dependent on individualized proof. *Id.* at 457; *Brooks v. S. Bell Tel. & Tel., Co.,* 133 F.R.D. 54, 57-58 (S.D. Fla. 1990) (the commonality requirement is not satisfied when the court would have to consider individualized proof of each class member's relationship with the defendant). The typicality requirement cannot be

satisfied if the plaintiffs' claims arise from a different course of conduct than the claims of the absent class members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

The Eleventh Circuit affirmed denial of class certification in a similar case, finding that the typicality requirement could not be satisfied. *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 Fed. Appx. 762, 764–65 (11th Cir. 2012). In *DWFII*, a medical provider attempted to certify a (b)(2) and (b)(3) class against a PIP insurer on the contention that the PIP statute precluded the insurer from applying a medical coding edits to the provider's bills. The Eleventh Circuit reasoned:

> Even if the class is able to show that NCCI edits are impermissible under Fla. Stat. § 627.736 *et seq.*, each individual medical service provider in the class must still demonstrate that it is entitled to reimbursement for the disputed charges-*i.e.*, the bill was properly completed pursuant to Fla. Stat. § 627.736(5)(b)(1)(d), the benefits of the insurance plan were not exhausted at the time of the procedure, the recipient of the medical services had valid insurance coverage with State Farm, and the medical provider actually performed the services for which it billed. Furthermore, State Farm is entitled to present any unbundling or set off defenses that would allow it to properly reduce the amount of reimbursement due. Fla. Stat. § 627.736(5)(b)(1)(e). Because each claim would require the establishment of different facts and would be subject to different defenses, we conclude that the district court did not abuse its discretion in finding that this prerequisite [typicality] was not met and class certification was therefore improper.

*DWFII Corp.*, 469 Fed. Appx. at 764–65.[8]

VIP cannot establish typicality or commonality. VIP's claim, as well as the claims of each putative class member, have unique and significant issues, including: (i) whether or not there is

---

[8] *See also, Coastal Neurology, Inc. v. State Farm Mut. Ins. Co.*, 458 Fed. Appx. 793, 794-95 (11th Cir. 2012)(consideration of PIP insurer's individualized defenses precluded class certification); *Dyer v. Publix Super Markets, Inc.*, No. 97-2706-CIV-25E, 2000 WL 33339613 at *9-11 (M.D. Fla. Mar. 22, 2000) (denying class certification when varying circumstances would require evidence specific to individual plaintiffs and would raise individualized defenses); *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006) ("Even an arguable defense can vitiate certification if it will distract the named plaintiff's attention from the issue common to the class.") (internal quotation marks and citations omitted).

standing through a valid assignment of benefits, (ii) the rights conveyed or released in an assignment of benefits,[9] (iii) compliance with the Repair Act, (iv) whether the insured knew or agreed to any particular pricing, (v) what the insured was told in writing or verbally by the shop regarding his or her liability for payment, (vi) any misrepresentations to GEICO General and/or its insureds, (vii) what the windshield repair shop knew about what GEICO General would pay, and (viii) whether the work was actually done.

All of these individual issues affect whether or not there is liability, and could form the basis for any number of individual defenses. The commonality and typicality requirements are therefore not satisfied in this case.

### V. The Predominance and Superiority Requirements are Not Satisfied.

In addition to satisfying all of the requirements of Rule 23(a), a party seeking class certification must show that the action is maintainable under at least one of the three sub-sections of Rule 23(b). VIP is seeking certification under Rule 23(b)(3). VIP is therefore required to show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed. Appx. 782, 788 (11th Cir. 2014)

Rule 23(b)(3) requires a showing that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.

---

[9] The assignments of benefits submitted by different shops (proposed class members) differ substantially. They assign different benefits, contain different provisions, and often release various claims. GEICO General has submitted exemplar copies of the differing assignments. *See* Ex. 5-1 to Proffer, Assignment of Benefit Exemplars attached as Exhibit 1 to the Eberling Declaration.

1989).  When, "after the adjudication of class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

For the predominance inquiry, the court must consider all the claims, defenses, and other issues in the case, not just the one or two issues upon which VIP chooses to focus.  As established above, the adjudication of a windshield claim raises several individualized issues, including:

- Is there a valid assignment, or (like in this case), a forgery?
- What does the assignment say – does it release the insured?
- Did the insured authorize the work?
- What was shown to the insured and what did he or she sign – a blank work order or an invoice – and does the work order or invoice comply with the Repair Act?
- Did the documentation imply that the insured would owe anything?
- Did the shop verbally represent whether the insured would owe anything, and if so what?
- Is there an agreement concerning price between the shop and the insured?
- Was the shop aware of what GEICO General was willing to pay before doing the work?
- Did the shop receive a work order from GEICO General, or did it avoid a work order by doing the work before notifying GEICO General?
- Are there other equitable considerations?
- Was the work actually done?

These and other individualized issues predominate over any common issues in this case.

This case would similarly present manageability problems that defeat any claim that a class action in this case would be "superior to other available methods" for addressing class member claims. Fed. R. Civ. P. 23(b)(3); *see also Perez*, 218 F.R.D. at 273. The adjudication of this case would require

a series of thousands of mini trials that would be impossible to manage. *See Coastal Neurology*, at 545 (S.D. Fla. 2010) (the "management of a class action containing thousands of [PIP] claims would prove difficult"); *Johnson v. GEICO Casualty Co.*, 310 F.R.D. 246, 255 (D.Del. 2015) (PIP class action rejected because the trial would "collapse into individual mini-trials" on individualized merits and defenses). Thus, "the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant to a particular [class member]." *Perez*, 218 F.R.D. at 273 (internal citations omitted).

Moreover, any concern that it would be cost prohibitive for a class member to pursue an individual claim is negated by the existence of the Florida Statute that permits recovery of attorneys' fees by an insured "[u]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer." Fla. Stat. § 627.428(1); *see also Mills v. Foremost Ins. Co.*, 259 F.R.D. 663, 680 (M.D. Fla. 2010). It is undisputed that thousands of individual windshield cases have been filed in Florida's state courts, and there is no shortage of lawyers willing to file them. Moreover, this action does nothing to further the issues in those actions because the proposed class would exclude pending lawsuits.

Finally, after filing this case and telling this Court that a class action is a superior way to resolve these issues, VIP has itself continued to pursue and file a significant number of individual lawsuits separate from this case. There could be no clearer statement – by the very party seeking to be appointed a class representative – that a class action is not superior.

**VI. Certification Under Rule 23(b)(2) is Not Proper in this Case.**

Rule 23(b)(2) requires a showing that "the predominant relief sought is injunctive or declaratory." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *see also DWFII*, 469 Fed. Appx. at 765. Courts have found that monetary relief (even if not sought) predominates unless it is purely incidental to requested declaratory relief. And damages are only incidental when "class members automatically would be entitled [to them] once liability to the class . . . is established[,]" and awarding them "should not entail complex individualized determinations." *DWFII*, 469 Fed. App'x at 765; *see also Karhu v. Vital Pharmaceuticals, Inc.*, 2014 WL 815253 at *11 (S.D. Fla. 2014).

As the court recognized in *DWFII* – even when disclaimed in an effort to facilitate certification – damages are primary and not merely "incidental" to equitable relief when damages would have to be individually determined for each member of the proposed class. *DWFII*, 469 Fed. Appx. at 765. In *Powers v. Geico*, 192 F.R.D. 313, 318 (S.D. Fla. 1998), the court observed that the declaration as to entitlement to unreimbursed losses was "equivalent to a declaration of liability" and was "designed primarily to facilitate and ensure the satisfaction of monetary relief."

This is the exact situation in this case. VIP makes clear that its primary goal is the award of insurance benefits and damages. Count III expressly claims damages, and VIP seeks to certify a (b)(3) class for damages. The proposed class and declaratory relief issues are all designed to require GEICO General to pay VIP and the class whatever amount they invoice. (Comp. par 63, 75). This includes a requested declaration as to "whether Plaintiff and the Class have incurred damages as a result of Defendant unlawfully underpaying for windshield damage claims." (Comp. par. 63.h.) As in *Power*s, this court should decline to certify a Rule 23(b)(2) class. *Id.; Stalley v. ADS Alliance Data Systems, Inc.* 296 F.R.D. 670, 684 (M.D. Fla. 2013) (declining to certify 23(b)(2) class on similar

grounds); *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 683 (S.D. Fla. 2007); *Marino v. Home Depot, U.S.A.,* 245 F.R.D. 729, 736 (S.D. Fla. 2007).

Moreover, the Court cannot issue declaratory or injunctive relief that would require GEICO General (or any other insurer) to pay VIP's or another shop's chosen invoicing amount.  Even if the Court found that GEICO General cannot rely on the price it can secure from other competent and conveniently located repair facilities as provided in the governing policy, the result would not be to automatically require GEICO General to pay whatever amount the shop chose to invoice.  Rather, a determination would have to be made based upon all the facts of the particular claim.  Those facts would include whether the insured contracted to pay a specific amount, whether an estimate was provided, what representations were made about the insured's responsibility to pay, and what notice did the shop have of what GEICO General would be willing to pay before doing the work.

The Court should also reject any request for "hybrid" certification of the declaratory/injunctive relief class under Rule 23(b)(2) and the damages sub-Class under 23(b)(3). In *Hammett v. American Bankers Ins. Co.,* 203 F.R.D. 690, 702 (S.D. Fla. 2001) – as in this case – the plaintiff tried this tactic to avoid Rule 23(b)(2)'s requirement that injunctive and declaratory relief predominate over money damages. *Id.* As the court noted, "[m]oving for hybrid certification does not change this result." *Id.; see also Holmes v. Continental Can Co.,* 706 F.2d 1144, 1158 n.10 (11th Cir. 1983) (The "policies underlying the requirements of (b)(3) should not be subverted by recasting and  bifurcating every class suit for damage as one for final declaratory relief of liability under (b)(2), followed by a class suit for damages under (b)(3)").

Finally, the purpose of a (b)(2) class is to establish uniform rights or obligations between the class and the defendant.  But VIP seeks to exclude all pending lawsuits – of which there are

thousands. This case would therefore not result in uniformity or eliminate the possibility of inconsistent results. And since it has filed individual cases both before and after filing this proposed class action, this is true not only for unnamed class members, but also for VIP itself.

## CONCLUSION

VIP has failed to meet its burden for class certification under Rule 23 and governing law. VIP's Motion for Certification should therefore be denied for the reasons set forth above.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Edward K. Cottrell (FBN 013579)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
jmarino@sgrlaw.com
ltrowell@sgrlaw.com
ecottrell@sgrlaw.com

*Attorneys for Defendant*
*GEICO General Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on June 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ John P. Marino*
Attorney